# CRIMINAL CASES.

## 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡.

### W. W. ATKINS V. COMMONWEALTH.

January 19, 1922.

Absent, Saunders, J.

1. SEDUCTION—*Seduction by Married Man—Promise of Marriage as Element.*—The conviction of accused was sought and obtained upon the theory that he seduced prosecutrix under a promise of marriage, following upon a false representation that he was a single man. The offense was charged in the language of the statute (Code of 1919, sec. 4410)., and as thus charged, a promise of marriage was not a necessary element of the crime. But, in the instant case, conviction necessarily depended upon proof of a promise of marriage, as the evidence relied upon to support the charge of seduction was inseparably linked with the claim that such a promise was made.

2. SEDUCTION—*Conflicts in Evidence Determined by Verdict of Jury.*—Conflicts in the testimony of prosecutrix and accused and another witness as to whether prosecutrix had been told that accused was a married man were settled by a verdict of guilty, and if prosecutrix's testimony was sufficiently supported by other evidence, the verdict cannot be interfered with by the appellate court.

3. SEDUCTION—*Corroboration—Conclusiveness of Verdict.*—If there is other evidence in the case, direct or circumstantial, fairly tending to support the testimony of the prosecutrix upon the essential facts which made out a case of seduction by accused, then prosecutrix's testimony is sufficiently supported to warrant a verdict of guilty.

4. SEDUCTION—*Presumption of Chastity—Section 4410, Code of 1919.*—Under section 4410, Code of 1919, the chastity of prosecutrix in a prosecution for seduction is presumed in the absence of evidence to the contrary.

5. SEDUCTION—*Corroboration—Case at Bar.*—In a presecution for seduction, a witness, a connection by marriage of prosecutrix, declared that accused, a married man, asked him if he had seen his girl the prosecutrix; said she was the best looking girl in the county, and that he intended to take her away from there. *Held:* That, this, together with other facts and circumstances in the case which tended to corroborate prosecutrix's story, constituted independent evidence which fairly tended to corroborate the prosecutrix upon the essential elements of the crime.

6. SEDUCTION—*Instructions—Conflict.*—The jury were instructed that the accused could not be convicted on the uncorroborated testimony of the prosecutrix, "yet if the admissions of the accused and other surrounding circumstances substantiate her testimony so as to satisfy their minds of the truth of her statements, then this is sufficient." Another instruction contained the following language: "Without undertaking to indicate the precise amount of corroborating testimony, which in this case would be sufficient, the court tells the jury that it must be evidence which does not emanate from the mouth of the seduced female, that it must not rest wholly upon her credibility, but must be such evidence as adds to, strengthens, confirms and corroborates her." *Held:* That, these instructions were not in conflict, and read together informed the jury as to the character of proof necessary for conviction.

7. INSTRUCTIONS—*General Rules—Singling Out Certain Facts—Conflicts—"Circumstances of the Case."*—It is well settled that instructions must not single out certain facts and direct the jury to base a verdict thereon, to the exclusion of other material facts in the case; that they must not be so inconsistent and conflicting with each other as to mislead or confuse the jury; and that they must not contain such a vague and indefinite and unexplained reference to "the circumstances of the case" as will tend to turn the jury loose in the field of speculation and conjecture.

8. WITNESSES—*Corroboration—Declarations Out of Court.*—It is a well settled general rule, subject to certain exceptions, that the declarations of a witness made out of court are not admissible for the purpose of corroborating his testimony in court, for the reason that such evidence is hearsay.

9. APPEAL AND ERROR—*Improper Admission of Testimony—Harmless Error.*—A judgment will not be reversed for the admission of improper testimony unless such testimony appears to have been capable of prejudicing the losing party.

10. SEDUCTION—*Evidence—Declarations of Prosecutrix.*—The admis-

sion of testimony of a witness as to a statement of prosecutrix of where she was going at the time of the alleged crime, which did not tend to corroborate her story of a wedding trip but the contrary, was harmless as to defendant.

11. SEDUCTION—*Evidence — Declarations of Prosecutrix — Instructions—Harmless Error.*—The testimony of a witness as to a statement of prosecutrix possibly corroborative of her story in court held harmless, in view of an instruction by the court that the jury should disregard corroborative evidence emanating from the mouth of the prosecutrix, and telling them that such corroboration was not sufficient to warrant a conviction.

Error to a judgment of the Circuit Court of Halifax county.

*Affirmed.*

The opinion states the case.

*M. B. Booker* and *James H. Guthrie,* for the plaintiff in error.

*John R. Saunders, Attorney General; J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

KELLY, P., delivered the opinion of the court.

The indictment in this case charged that on the 26th day of June, 1921, in Halifax county, "W. W. Atkins, being a married man, * * * did then and there unlawfully and feloniously seduce and have illicit connection with one K. L. Yates, * * * an unmarried female of previous chaste character."

The case was tried twice. At the first trial the jury found the defendant guilty and fixed his punishment at two years in the penitentiary. This verdict, on motion of the defendant, was set aside. At the second trial he was again found guilty, and his punishment was fixed by the jury at five years in the penitentiary. The court refused

to interfere with the second verdict, and passed sentence on the defendant in accordance therewith.

There are three assignments of error set out in the petition. We shall take them up in their inverse order.

1. It is contended that the court erred in refusing to set aside the verdict on the ground that it was contrary to the law and the evidence.

Upon the vital and determinative questions of fact, there is the conflict of testimony between the prosecutrix and the accused so commonly encountered in cases of this character. It is not necessary to set out the evidence in full. The following statement is sufficient for a proper disposition of the case:

The defendant was a married man, having a wife and children living at South Boston. He was employed by the Coca-Cola Company as a traveling salesman, and as such seems to have had his headquarters first at South Boston and later at Leaksville, N. C. The prosecutrix was an unmarried woman, twenty years old, who, with the assistance of a younger sister, conducted a store owned by her invalid father. This store was in the territory in which the defendant sold and delivered Coca-Cola so long as he had his headquarters at South Boston. She testified that for six or seven months before the alleged seduction she saw him at the store two or three times a week; that he told her he was unmarried; that five months after she first met him he proposed marriage; that she declined the first proposal, but that on being asked the second time she agreed to marry him; that two months in advance they agreed on June 26, 1920, as the date for the marriage; that on June 26, 1920, after having written her that week two letters (which she says she destroyed) saying he was coming after her on that date, he came for her at night; that they walked to Clover, a railroad station about four miles from the store; that on the way to Clover he said they would take the train there

for Randolph where people would not know them, and go thence by next train to Leakesville, N. C., and be married; that on the way to Clover that night, after they had gone about three miles, he asked her to have intercourse with him, but she declined; that when they arrived at Clover they found no one at the station; that he then asked her again to have intercourse with him, which she at first refused, but to quote her language, "he said we were going to be married anyhow—and he forced me—he overpowered me. He said we would leave at 3 o'clock. Father did not know where I was. He said he was going to leave me if I didn't have intercourse with him. I was four miles from home and it was 3 o'clock in the morning." They left Clover by train and arrived at Randolph before daylight. At the latter place they had intercourse again, and, according to her statement, he made there "the same threats that he made at Clover." Later in the day they left by train for South Boston. Before leaving Randolph he told her he would get off at South Boston and see his wife and children. This she says was the first she had ever heard of his being married. She left South Boston that evening afraid to return to her people at home, and went to Richmond, where she remained at a boarding house until her brother-in-law came after her.

[1] The case is peculiar in some of its particulars. The defendant is a married man, but his conviction was sought and obtained upon the theory that he seduced the prosecutrix under promise of marriage, following upon a false representation that he was a single man. The offense is charged in the indictment, quoted above, in the language of the statute (Code, sec. 4410), and as thus charged a promise of marriage is not a necessary element of the crime. But the conviction in this case necessarily depends upon proof of a promise of marriage, for the evidence relied upon to support the charge of seduction is inseparably linked with the claim that such a

promise was made.  If the proof of the promise of marriage fails, then the foundation of the case sought to be made by the Commonwealth is gone.

[2, 3]  The testimony of the prosecutrix is in conflict with that of the witness, Huckabee, a mutual acquaintance and friend of the defendant and the prosecutrix, who testified that he told her before she met defendant that the latter was married; and her testimony is also in conflict with that of the defendant, who denies the promise of marriage, and says that she knew all the while that he had a family at South Boston.  These conflicts, however, were settled by the verdict of the jury, and we cannot interfere with their finding, provided her testimony is sufficiently supported by other evidence.  (Code, sec. 4413.)  This latter question, too, was concluded by the verdict, if we can say there is other evidence in the case, either direct or circumstantial, fairly tending to support the testimony of the prosecutrix upon the essential facts.  *Riddleberger* v. *Commonwealth,* 124 Va. 783, 97 S. E. 310.

[4, 5]  The corroborating evidence does not appear to us to be very satisfactory or convincing, but it satisfied the jury, and we are of opinion that it was sufficient to bring the case within their province.  There was little direct evidence, except by the prosecutrix, of any courtship or love-making between the parties, but they saw each other several times a week for some time before the alleged seduction took place.  Her chastity was presumed (Code, sec. 4410; *Harding's Case,* decided today, *post,* p. 543, 110 S. E. 376).  But more than this, her previous chaste character was established by entirely satisfactory proof.  That their relations were not merely those of store manager on the one hand and salesman on the other is conceded; and it is a fair, if not a necessary, inference from the evidence that he was very attentive to her, and that no other man paid her any attention from the beginning of their acquaintance to the

date of her alleged seduction. On the day which she says they had agreed on as the date for their marriage, he admits that he journeyed from Leakesville, N. C., to Clover, in Halifax county, walking thence several miles to the Yates store. According to one of the witnesses, he carried a small valise. He denies having the valise, but whether he had any baggage or not, he was making a special trip to see her. After meeting her there, they left together and made the journey to South Boston, as above set out. They differ as to why they went. She says it was to reach North Carolina and get married. He says she told him she wanted to leave home, and that she went against his advice. But the fact remains that he came all the way from Leakesville, N. C., to see her on the day she says they had agreed to marry, and that they went off together that night. It is his claim that he had often been intimate with her in the bushes near the store prior to that date, but he does not offer to explain the apparently admitted fact that he did not have intercourse with her that night until after he had walked with her in the dark through the country, four miles to Clover.

We may concede, however, that if the corroborating evidence went no further than hereinbefore appears, we would have to hold, as we did in *Riddleberger* v. *Commonwealth, supra,* that it is "as consistent with the conclusion that there was no promise of marriage as with the conclusion that there was such a promise." But there was the additional testimony of Sam Boyd, which though contradicted by the defendant, may properly and reasonably have been believed by the jury, and which was wholly inconsistent with any other theory than that the defendant was holding himself out as the sweetheart and finance of the prosecutrix. Boyd testified as follows:

"I know Katie L. Yates. Have known her about eleven years. In going down the street in South Boston sometime

in the spring of last year W. W. Atkins jumped on the running board of my automobile, and asked me if I had been down the country, and if I saw his girl, Miss Katie Yates. He said she was the best looking girl in the county, and he intended to take her away from there. My son married Katie Yates' sister some two years ago."

If this incident took place—and whether it did or not was a question for the jury—it can only be reasonably explained upon the theory that the defendant was assuming to Boyd the role of an unmarried man, a suitor of a sister-in-law of Boyd's son, and, further, that he was pretending that he intended to make her his wife. In no other guise could he have decently referred to her as "his girl," or have lawfully "intended to take her away from there." This statement to Boyd, especially in view of the relationship of Boyd's son to the prosecutrix, cannot be said to be as consistent with the conclusion that there was no promise of marriage as with the conclusion that there was such a promise. We think this testimony, taken with the other facts and circumstances above adverted to, constituted independent evidence which fairly tended to corroborate the prosecutrix upon the essential elements of the crime. This being true, the credibility of the story as told by her was a question for the jury. Their finding established the truthfulness of her narrative, and it follows that the court did not err in refusing a new trial on the ground that the verdict was contrary to the law and the evidence. If her story was true, the defendant was plainly and indefensibly guilty.

[6] 2. It is insisted that the court erred in giving instruction No. 2 offered by the Commonwealth; which was as follows:

"The court instructs the jury that while they cannot convict the accused on the uncorroborated testimony of the prosecutrix, Katy L. Yates, yet if the admissions of the

accused and other surrounding circumstances substantiate her testimony so as to satisfy their minds of the truth of her statements, then this is sufficient."

It is urged that this instruction improperly singled out a part only of the evidence, to-wit, the admissions of the defendant; that it improperly commented upon the weight and sufficiency of the evidence; and that it referred to the "surrounding circumstances" in such a broad and unlimited manner as to make the instruction erroneous. These objections are without merit. If it be conceded that either or all of them are well founded when the instruction is regarded by itself, they become of no importance when it is read, as it must be, with the instruction given by the court on its own motion as follows:

"The court instructs the jury that the accused cannot be convicted upon the testimony of the female seduced unsupported by other testimony. Without undertaking to indicate the precise amount of corroborating testimony, which in this case would be sufficient, the court tells the jury that it must be evidence which does not emanate from the mouth of the seduced female, that it must not rest wholly upon her credibility, but must be such evidence as adds to, strenghtens, confirms and corroborates her."

The two instructions are not, as is claimed on behalf of the defendant, in conflict with each other, and when read together correctly inform the jury as to the character of proof necessary for conviction.

[7] We have looked to the authorities cited and relied upon by the learned counsel for the prisoner in support of the alleged error under consideration. They are not applicable to this case, and require no discussion here. We find no fault with the legal propositions invoked on behalf of the accused. It is well settled that instructions must not single out certain facts and direct the jury to base a verdict thereon, to the exclusion of other material facts in the case; that

they must not be so inconsistent and conflicting with each other as to mislead or confuse the jury; and that they must not contain such a vague and indefinite and unexplained reference to "the circumstances of the case" as will tend to turn the jury loose in the field of speculation and conjecture. But nothing of that sort is to be found in the instructions given in this case when they are fairly considered as a whole. They guarded every right of the accused, and the jury could not, as the intelligent men they must be presumed to have been, have been misled to the prisoner's prejudice by anything contained therein.

3 The third and last assignment of error questions the ruling of the trial court in admitting certain testimony given by the witnesses, N. G. Terry and Donald Lacks.

(a) Terry, after having testified that he was chief of police in South Boston and saw the prosecutrix there about one o'clock on June 27, 1920, was permitted over the objection of the prisoner to say that she then and there told him "that she had no people in South Boston, and was on her way to some place in North Carolina; that she had a kinsman up there and had started to North Carolina to get work."

(b) Lacks after having testified that he saw the prosecutrix at his home in Randolph, early one morning in June, 1920, was permitted, over the objection of the prisoner, to say that she told him "she was going to South Boston and then that evening she was going to Leakesville, N. C."

It is insisted that the court erred in allowing the above recited testimony to go to the jury, and that the judgment of conviction ought for that reason to be reversed. The ground upon which the objection to this evidence was based was that "the statements, not having been made in the presence and hearing of the accused, were hearsay and inadmissible as evidence against him."

[8, 9] It is a well-settled general rule (subject to certain

exceptions not applicable here) that the declarations of a witness made out of court are not admissible for the purpose of corroborating his testimony in court, for the reason that such evidence is hearsay. *Oliver* v. *Commonwealth,* 77 Va. 590; *Howard* v. *Commonwealth,* 81 Va. 488; *Repass* v. *Richmond,* 99 Va. 508, 39 S. E. 160; *Jessie* v. *Commonwealth,* 112 Va. 887, 890, 71 S. E. 612. It is equally well settled, however, that a judgment will not be reversed for the admission of improper testimony, unless such testimony appears to have been capable of prejudicing the losing party. *Oliver* v. *Commonwealth, supra.*

[10] We have no hesitancy whatever in holding that the above-recited testimony of the witness, Terry, could not have been harmful to the defendant. The statement which he said the prosecutrix made to him did not tend to corroborate her story of a wedding trip to North Carolina. On the contrary, the statement showed that she was going on an entirely different mission, and was thus favorable rather than unfavorable to the defendant.

At first view, there appears to be more difficulty with reference to the testimony of the witness Lacks. The statement made to him by Miss Yates, without indicating why she was going, did show that she was on the way to Leakesville, N. C., and that is where she had testified they were going for the purpose of being married. It would be possible, therefore, to look upon this evidence as corroborative of her story in court. We do not think, however that the jury would have accorded it any such effect. To have done so, they would have had to believe that at the time she made the statement to Lacks she still thought she was going to Leakesville *to be married.* She could not have had any such belief at that time, because she also told Lacks, in the same conversation, that she was going to stop at South Boston. No stop at that place had been contemplated by her until after the defendant had told her for the first time that he

was married and was going to stop there to see his wife and children. In other words, she had learned when she was talking to Lacks that a legal marriage between her and the defendant was not possible, and if she then intended to go to Leakesville, it was not as a part of the previous plan between her and the defendant about which she testified in court.

[11] If, however, it can be supposed that the jury might have regarded her statement to Lacks as corroborative of her narrative in court, it was such corroboration as they were plainly told by the court to disregard. If it was corroboration, it "emanated from the mouth of the seduced female," and the jury had been expressly told by the court that such corroboration was not sufficient to warrant a conviction.

We are of opinion that there was no reversible error in the admission of the testimony in question.

For the foregoing reasons, the judgment complained of must be **affirmed.**

*Affirmed.*