# Richmond.

## JUDD, NO. 1, v. COMMONWEALTH.

### November 18, 1926.

1. SEDUCTION—*Evidence Held Sufficient to Sustain Conviction.*—In the instant case defendant became acquainted with prosecutrix about six months prior to the alleged seduction, visited her regularly and carried her home whenever she went to church. Before there was any engagement prosecutrix wrote an affectionate letter to defendant and defendant had a friend write a letter for him in reply in most endearing terms which he signed and sent to prosecutrix. Prosecutrix said she yielded to defendant because she loved him and he promised to marry her. Prosecutrix's previous chastity was admitted. Defendant denied the promise to marry her. On several occasions defendant roughly resented prosecutrix's being with other men. There was other evidence of defendant's attention and devotion to prosecutrix.

   *Held:* That it cannot be said that a verdict of guilty was without evidence to support it.

2. SEDUCTION—*Promise of Marriage—Corroborating Evidence—Appeal and Error.*—In the instant case, a prosecution for seduction, the corroborating evidence of the promise of marriage did not appear to be very satisfactory or convincing but it satisfied the jury and it was sufficient to bring the case within their province.

3. SEDUCTION—*Section 4410 of the Code of 1919—What Will Warrant a Conviction.*—In order to warrant a conviction under section 4410 of the Code of 1919, there must be (1) a promise of marriage, conditional or unconditional, (2) seduction of an unmarried female, (3) illicit connection with such female, and (4) the female must be of previous chaste character. The last requisite, however, is presumed in the absence of evidence to the contrary.

4. SEDUCTION—*Promise of Marriage—Conditional Promise.*—Prior to the Code of 1919 it was doubtful whether a conviction of seduction could be sustained where the promise of marriage was conditional, but section 4410 of the Code of 1919 provides that if any person, under promise of marriage, conditional or unconditional, seduce, etc., therefore there is no longer a doubt that a conditional promise of marriage will support a conviction for seduction.

5. SEDUCTION—*Promise of Marriage—Corroboration.*—Undoubtedly, the

promise of marriage is an essential of the offense, and the proof of it cannot be rested on the unsupported testimony of the female seduced, but this support need not be by direct testimony of admissions or declarations of the accused. It may be, and often is, established by proof of the surrounding circumstances. At the same time, the innocent should be protected against a charge "still harder to be defended by one ever so innocent."

6. SEDUCTION—*Appeal and Error—Conflicting Evidence—Weight of Verdict of Jury.*—There is no safer way of settling a question about which the principal parties are in conflict, and greatly tempted to prevaricate, than by the verdict of an impartial jury, under proper instructions of the court. The jury in a prosecution for seduction should consider all of the circumstances of the case, bearing in mind the presumption of innocence of the accused, and the support required to the testimony of the prosecutrix. When they have done this and are satisfied beyond a reasonable doubt of the guilt of the accused, their verdict cannot be disturbed, unless, treating the accused as a demurrant to the evidence, the court can say that the verdict is plainly contrary to the evidence or is without evidence to support it. Each case must depend on its own circumstances.

Error to a judgment of the Circuit Court of Rockingham county.

*Affirmed.*

The opinion states the case.

*Chas. S. Hammer* and *H. C. Bickers,* for the plaintiff n error.

*John R. Saunders, Attorney General, Leon M. Bazile,* and *Lewis H. Machen, Assistant Attorneys General,* for the Commonwealth.

BURKS, J., delivered the opinion of the court.

Justice Judd, hereinafter called defendant, was convicted, under section 4410 of the Code, of seduction under a promise of marriage, and sentenced to the penitentiary for two years and a half. He assigns three errors alleged to have been committed by the trial court.

The first and second assignments of error are to the action of the trial court in giving two instructions for the Commonwealth. The instructions are too plainly right to warrant discussion.

The third assignment of error is to the action of·the trial court in refusing to set aside the·verdict of the jury on the ground that it was contrary to the law and the evidence. ·

The defendant stands here practically as on a demurrer to the evidence by him, and the case, stated from that standpoint, is as follows: The defendant became aquainted with the prosecutrix about Christmas, 1924. From that time till after the alleged seduction in August, 1925, he visited her regularly once or twice a week, and always carried her home whenever she went to church. In March, 1925, before there was any engagement, she wrote him a most affectionate letter, to which he got a friend to reply in his name the next day in the same vein, or, ·to use the language of the witness, "he just told me to take the letter he gave me, and write according to that one." This letter was mailed by the defendant, although· he claims not to have read it, and received by the prosecutrix. It contained the most endearing terms, and asked for an engagement at the church the next night. The writer testified: "I thought she was his sweetheart, I didn't know." His frequent visits continued and he found her a perfect lady, till about August 8, 1925, when he made the improper proposal to her and she yielded. When asked why, she replied: "Well, because I loved him and he seemed to like and love me, and he promised to marry me, and everything like that, and I just gave up to him right there." The details of the conversation which took place at the time need not be given further than to say that she testified that he said: "Oh

yes; I would marry you if anything happened to you."
She further testified: "He has told me thousands of
times, I reckon, that he cared more for me than any
girl he ever saw, and never would love anybody else,
and that if I married anybody else that it would kill him
dead, and a whole mass of stuff." The illicit relations
continued until about February 1, 1926. The prose-
cutrix gave birth to an eight months child in May, 1926.
These facts were practically admitted by the defendant
except that he denied the promise of marriage.

In July, 1925, the defendant met the prosectrix in
the road in an automobile. She was sitting on the back
seat with a young man, while in the front seat was
occupied by another young man and young lady. The
defendant had his pistol in his hand and his attitude
was such that the young women began to scream and
threatened to jump out. The automobile after passing
him was stopped and the young women got out, and
when the defendant came up he fired his pistol into the
ground at the feet of the prosecutrix.

At another time, apparently later, though the date
is not fixed, another young man accompanied the prose-
cutrix to an oyster supper. Soon after supper the de-
fendant appeared where the couple, with others, were
standing and announced generally, without addressing
his remarks to anyone in particular, that "he was a bad
man from no man's land," and took the prosecutrix off
and talked to her and afterwards accompanied her
home. Her escort did not return, and when asked why
responded: "Well, I think a man taking a girl away
from me once, I don't give him a chance to take her
away any more."

One of the defendant's own witnesses testified that
the defendant went with the prosecutrix regularly for
a year or so, and that he was apparently devoted to her.

A negro woman, fortune teller, testified that in October, 1925, the defendant visited her and said that he was in trouble with a woman and asked her to help him to do something to get rid of the baby.

The prosecutrix lived on the "other side of the river" from the place of business of the defendant, and his frequent visits to the "other side of the river" was known to his associates. About a month after Christmas, to-wit, in January, 1926, when the defendant had ceased visiting the prosecutrix, one of his fellow workmen, who had heard him talking and laughing about going across the river, asked him: "Are you going over the river any more?" To which he replied: "No, when I get what I want, I quit." This conversation was not denied by the defendant.

[1] Upon this state of facts, we cannot say that the verdict of the jury was without evidence to support it.

[2] Our attention has been called to the similarity of this case to *Riddleberger* v. *Commonwealth*, 124 Va. 783, 97 S. E. 310, in which a verdict of conviction was set aside because of the lack of sufficient evidence to corroborate the prosecutrix as to the promise of marriage. The cases are undoubtedly similar in many of their details, but they are also dissimilar in some important aspects. It may be here said, as was said in *Atkins* v. *Commonwealth*, 132 Va. 500, 505, 110 S. E. 379, 380: "The corroborating evidence does not appear to us to be very satisfactory or convincing, but it satisfied the jury, and we are of opinion that it was sufficient to bring the case within their province." It is true that the defendant never gave the prosecutrix a ring or any other present; that they kept up no correspondence; that the only public gathering to which he ever took her was to a picture show twice, and that neither of them ever mentioned an engagement to her parents, or to

any friend of either. Practically like facts appeared in the *Riddleberger Case*, but here the similarity ceases. In the instant case it is conceded that the prosecutrix was of chaste character when the defendant first became acquainted with her. He says he was never in love with her, yet persisted in his attentions to her, and when asked why, if he did not care for her, did he go to see her every few days for six or eight months, he responded: "I don't know. I just went over there." He enlisted her affections; he dominated her conduct to such an extent as to make other young men afraid to appear with her in public; he applied to a negro fortune teller for aid in disposing of the baby; and finally his former conduct is explained by his statement: "When I get what I want, I quit." Upon this evidence the jury was warranted in finding a set purpose on the part of the defendant to compass the ruin of the prosecutrix, by whatever means or promises he chose to employ. That he did seduce her, lead her astray from the path of moral rectitude, seems hardly open to question, and upon the same evidence the jury was warranted in finding a promise of marriage as a part of the same scheme to accomplish the purpose with which he set out.

Human motives and human actions differ so widely under different circumstances that we can derive little aid from comparing one case of this class with another of the same class. The facts are different.

[3, 4] In order to warrant a conviction under section 4410 of the Code,* there must be (1) a promise of mar-

---

*Section 4410. Seduction of female of previous chaste character; how punished.*—If any person, under promise of marriage, conditional or unconditional, seduce and have illicit connection with any unmarried female of previous chaste character, or if any married man seduce and have illicit connection with any unmarried female of previous chaste character, he shall be guilty of a felony, and, upon conviction thereof, shall be punished by confinement in the penitentiary not less than two nor more than ten years. For the purposes of this section, the chastity of the female shall be presumed in the absence of evidence to the contrary."

riage, conditional or unconditional, (2) seduction of an unmarried female, (3) illicit connection with such female, and (4) the female must be of previous chaste character. The last requisite, however, is presumed in the absence of evidence to the contrary. In the instant case the existence of requisites three and four is conceded, and the main contention of the defendant is that there is no corroboration of the prosecutrix as to "a promise of marriage." The promise proved was conditional. The words "conditional or unconditional" were inserted in the statute for the first time at the revisal of 1919, and the reason therefor is given in a note to that section by the revisors as follows: "Under this section as it stood before the revision, it was doubtful if the offense was committed where the promise of marriage was conditional. See 25 Am. & Eng. Ency. Law (2d ed.), page 230; 35 Cyc. page 1336; 11 Va. L. Reg. 424. In view of the insertion of the words 'conditional or unconditional' after 'promise of marriage,' this doubt no longer obtains."

It is manifest that the legislature intended to enlarge the protection afforded to unmarried females of previous chaste character.

In *Mills* v. *Commonwealth*, 93 Va. 815, 819, 22 S. E. 863, 864, it is said: "There are women in whose presence every evil thought stands abashed. They are guarded by their innocence and purity and need no other protection. They stand invulnerable in their own virtue. There are others whose dispositions are more easy and complaisant, but who would have perhaps escaped irretrievable ruin had not their confidence been secured, and their apprehensions put at rest, by a promise of marriage. To shield and save them from the arts of the seducer was the object of the law. It would be a mockery to extend its protecting care only

to those who have no need of its assistance. It should be here and ever the refuge and support of those who most need its protection."

The prosecutrix was of the latter class. She was one of four daughters of a poor farmer, and, with her sisters, worked in a factory in town in order to help support the family. She was of limited education, not strong in moral character, and would probably have escaped irretrievable ruin had not her confidence been secured and her apprehensions put at rest by the machinations of the defendant who quit when he got what he wanted.

The observation of Lord Hale, in reference to rape: "That accusations of this sort are easily made, hard to be proved, and still harder to be defended by one ever so innocent," applies with equal, if not greater, force to the charge of seduction in the absence of corroboration. This is recognized by the provision of section 4413 of the Code, declaring that no conviction shall be had for seduction under section 4410 upon the testimony of the female seduced unsupported by other evidence.

[5] Undoubtedly, the promise of marriage is an essential of the offense, and the proof of it cannot be rested on the unsupported testimony of the female seduced, but this support need not be by direct testimony of admissions or declarations of the accused. It may be, and often is, established by proof of the surrounding circumstances. This was true even before the amendment of the statute for the protection of unmarried females. If it were otherwise, the guilty would often escape, and the way of the seducer, whom the statute seeks to punish, would be rendered much easier. *Flick* v. *Commonwealth*, 97 Va. 766, 34 S. E. 39. At the same time, the innocent should be protected against a charge "still harder to be defended by one ever so innocent."

[6] We know of no safer way of settling a question about which the principal parties are in conflict, and greatly tempted to prevaricate, than by the verdict of an impartial jury, under proper instructions of the court. They should consider all of the circumstances of the case, bearing in mind the presumption of innocence of the accused, and the support required to the testimony of the prosecutrix. When they have done this and are satisfied beyond a reasonable doubt of the guilt of the accused, their verdict cannot be disturbed by this court, unless, treating the accused as a demurrant to the evidence, the court can say that the verdict is plainly contrary to the evidence or is without evidence to support it. Each case must depend on its own circumstances. In the instant case, the jury was fully and properly instructed on the subject of "reasonable doubt" and "corroboration" of the prosecutrix, as well as on other subjects, and we are unable to say that the verdict of the jury is *plainly* contrary to the evidence, or is without evidence to support it.

In view of our statute above quoted, we do not deem it necessary to discuss a number of cases cited for the defendant from other States, not having a similar statute, to the effect that a promise of marriage conditioned upon pregnancy resulting from the intercourse will not amount to seduction. See cases cited in note 51 L. R. A. (N. S.) 809.

The judgment of the trial court will be affirmed.

*Affirmed.*