## 𝕾taunton

James Hazel Britt v. Commonwealth of Virginia.

September 8, 1961.

Record No. 5289.

Present, All the Justices.

The opinion states the case.

*J. Kenneth Rader,* for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (A. S. Harrison, Jr., Attorney General,* on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

■ James Hazel Britt was convicted by a jury and his punishment fixed at two years in the State Penitentary on an indictment charging him with seducing under promise of marriage Thelma Dickerson, an unmarried female of previous chaste character. The lower court over-ruled a motion for a new trial and entered judgment on the verdict. We granted the defendant a writ of error.

Prior to his arraignment the defendant moved the court to quash the indictment on the ground that in its charge to the grand jury the court stated that "the Commonwealth's attorney does not send all of his witnesses to the grand jury because that is not necessary. He just sends enough to show probable cause." In support of his motion to quash the defendant contended that this statement was prejudicial to him "in that it directed that a true bill be found." The motion to quash was overruled, the defendant excepted, and that ruling of the lower court is the subject of the first assignment of error.

There is no merit in this assignment. The statement complained of is obviously an extract from the charge made pursuant to Code, § 19-129.[1] It is merely a general statement relating to the procedure to be followed in all cases which may be presented to the grand jury. There is no suggestion in the language used that the grand jury should find a true bill in this or in any other case which may be presented to them. It in no way infringed upon the function of the grand jury whose duty it is to examine into accusations made against persons charged with crime and determine whether it is proper that they be brought to trial.

In *Cutchin* v. *City of Roanoke,* 113 Va. 452, 478, 74 S. E. 403, we said that it is the duty of the grand jury, among other things, "To examine into accusations against persons charged with crime, and, if they see just cause, to find bills of indictment against them". Hence, the language used by the lower court in the present case, that the Commonwealth's attorney sends to the grand jury only a sufficient number of witnesses "to show probable cause" for finding a true bill was not improper or prejudicial to the defendant.

■ The main assignments of error challenge the sufficiency of the

---

[1] By Acts of 1960, ch. 366, p. 525, this section was recodified as § 19.1-154.

evidence to support the verdict. Specifically, the contentions are that the evidence does not warrant the finding that the prosecutrix was seduced and yielded to the defendant "under promise of marriage, conditional or unconditional," as required by Code, § 18-48,[2] and does not warrant the finding that the testimony of the prosecutrix was corroborated, as required by § 18-52.[3]

The evidence on behalf of the Commonwealth consists of the testimony of the prosecutrix, Thelma Dickerson, and that of her mother and father, in narrative form. No evidence was introduced on behalf of the defendant.

According to the prosecutrix, at the time of the alleged offense which she fixed at "March, 1959," she and the defendant were seventeen and nineteen years of age, respectively. She had completed the tenth grade in a public school and had become a trained beautician. She had known the defendant for about three years and they had been "dating" since July, 1957, or 1958. Together they had attended church, the movies and dances during that time, but the defendant had taken no meals at her home. During the three years they had gone together he had given her a "make-up set" on her birthday in February, 1958, or 1959, "she was uncertain which," a necklace at Christmas, 1958, a sweater at Christmas, 1959, and a "box lunch" on Memorial Day, 1960. She was unable to "approximate" the value of any of these gifts. He had not, she said, given her an engagement ring.

The prosecutrix testified that her first act of sexual intercourse with the defendant occurred at about 12:25 a. m., on a date in March, 1959, which she "could not remember," in the defendant's car on the "lead-in" road to Deep Run Hunt Club. According to the narrative, "Thelma testified on direct examination that the defendant asked her to have sexual intercourse with him after they had been parked about

[2] "§ 18-48. *Seduction of female of previous chaste character.*—If any person, under promise of marriage, conditional or unconditional, seduce and have illicit connection with any unmarried female of previous chaste character, or if any married man seduce and have illicit connection with any unmarried female of previous chaste character, he shall be guilty of a felony, and, upon conviction thereof, shall be punished by confinement in the penitentiary not less than two, nor more than ten years. For the purposes of this section, the chastity of the female shall be presumed, in the absence of evidence to the contrary." (Recodified by Acts of 1960, ch. 358, p. 422, as § 18.1-41.)

[3] "§ 18-52. *Evidence necessary to convict; limitation of prosecution.*—No conviction under §§ 18-48 and 18-50 shall be had on the testimony of the female seduced, abducted, or detained, unsupported by other evidence, nor unless the indictment shall be found within two years after the commission of the offense." (Recodified by Acts of 1960, ch. 358, p. 422, as § 18.1-42.)

twenty or twenty-five minutes, during which period he had been hugging and kissing her and having his hands on her; that she refused, saying that she was afraid she would become pregnant; that the defendant said if that happened he would marry her; that she then went ahead and had sexual intercourse with him; that they had had sexual intercourse on several subsequent occasions; and, that on each such occasion she would say that she was afraid she would become pregnant after which the defendant promised to marry her if she became pregnant and then she would have sexual intercourse with him."

She further testified that she had never been married, and that prior to her experience with the defendant she had not had sexual intercourse. She was pregnant at the time of the trial. The defendant, she said, who had been coming to see her "twice on weekends and once during the week for two years," ceased his visits in June, 1960.

On cross-examination the prosecutrix testified that on the occasion of their first intercourse, when the defendant "passed her home and drove his automobile into the Deep Run Hunt Club property she thought that he did so because he intended to have sexual intercourse with her; that she did not protest his actions; that the only question in her mind was the possibility of becoming pregnant; and that sexual intercourse was all right with her except for the possibility of pregnancy."

Pearl Dickerson, the mother of the prosecutrix, testified that Thelma and the defendant "had been going together for about three years as any boy would go to see a girl;" that "he came quite often and never missed over two weeks at a time;" that they had gone together to the movies and to church; that he had given her a sweater, a vanity set, a necklace, and a "box lunch;" that she "did not know whether they were planning to get married," but that "they acted like boys and girls who are in love." She further testified that during the time that Thelma and the defendant were going together other boys came to see her and that the defendant "did not prevent" their doing so.

Clarence Dickerson, the father of the prosecutrix, testified that the defendant and Thelma had been going together for two or three years; that "sometimes they went out alone and sometimes with another couple;" and that he did not know where they had gone and did not ask them. He further said that he "thought they were in love."

In order to constitute the crime of seduction under Code, § 18-48,

there must be (1) a promise of marriage, conditional or unconditional; (2) seduction of an unmarried female; (3) illicit connection with such female; and (4) the female must be of previous chaste character. *Judd* v. *Commonwealth*, 146 Va. 267, 272, 273, 135 S. E. 710; *Evans* v. *Commonwealth*, 183 Va. 775, 778, 33 S. E. 2d 636, 637. While under the terms of the statute the chastity of the female is presumed, in the absence of evidence to the contrary, the burden is on the Commonwealth to prove beyond a reasonable doubt the other constituent elements of the offense.

In the present case the undisputed testimony of the prosecutrix establishes the conditional promise of the defendant to marry her if she became pregnant. The illicit connection is likewise established by her undisputed testimony. But the serious question presented is whether the evidence establishes beyond a reasonable doubt the seduction of the prosecutrix within the meaning and intent of the statute.

In *Hillman* v. *Commonwealth*, 155 Va. 1004, 1007, 154 S. E. 475, we said: "An essential element of seduction is the consent of the female to the act of intercourse, and she must have consented, or yielded, by reason of the promise" of marriage. Again, in *Spangler* v. *Commonwealth*, 188 Va. 436, 440, 441, 50 S. E. 2d 265, 267, we said that where, as here, the specific charge is seduction under a promise of marriage, "the dominating force which influences the female to yield her person must be the promise to marry her."

Hence, in the present case the question is, Does the evidence on behalf of the Commonwealth, which comes entirely from the prosecutrix, show beyond a reasonable doubt that the dominating force which induced her to yield to the defendant was his promise to marry her? In our opinion, the testimony of the prosecutrix does not measure up to this requirement. In the first place, it is significant as to what the prosecutrix *did not say*. She did not testify that she and the defendant were enamored of each other, that they were engaged, or had planned to be married in any event. She did not say that on the occasion of her first downfall she was in love with him and was overcome by his advances. It is true that she said that she yielded on this and each subsequent occasion only after he had promised to marry her if she became pregnant. But it is clear from her further testimony that the dominating influence with her was not the defendant's promise to marry her, but the avoidance of the consequences of pregnancy which might or might not follow from their misconduct.

The prosecutrix admitted that she "thought" on the occasion of her

first downfall that when the defendant passed her home and drove into the Hunt Club lane he intended to have intercourse with her. And yet she "did not protest his actions." She further admitted that "sexual intercourse was all right with her except for the possibility of pregnancy," and that such "possibility" was *the only question in her mind.*" (Emphasis added.) In this situation, she bargained with the defendant, and merely to guard against a possible pregnancy, extracted from him the conditional promise to marry her. On each subsequent occasion she bargained with him in a similar fashion. This does not constitute a seduction within the meaning and intent of the statute. See *Spangler* v. *Commonwealth, supra,* 188 Va., at pages 440, 441, 442, 50 S. E. 2d, at pages 267, 268; *Bottoms* v. *Commonwealth,* 168 Va. 714, 191 S. E. 682.

Nor do we find that the alleged promise of marriage is corroborated, as required by Code, § 18-52, *supra.* We have several times pointed out that under the statute there cannot be a conviction on the unsupported evidence of the female seduced, but there must be other evidence not emanating from her mouth which adds to, strengthens, confirms, or corroborates her. Such evidence need not be direct but may be circumstantial or partly direct and partly circumstantial. If circumstantial, it need only supply such facts or circumstances as tend to support such testimony of the prosecutrix upon the essential elements of the offense. And when there is other testimony fairly tending to support the prosecutrix, it is for the jury to say whether she is corroborated. *Fuller* v. *Commonwealth,* 190 Va. 19, 26, 27, 55 S. E. 2d 430, 434, and cases there cited. We adhere to these principles.

However, in the present case, the record is devoid of the usual circumstances which tend to support the promise of marriage. There are no subsequent admissions or declarations of the defendant as to such promise. Nor are there such other circumstances which usually accompany the existence of an engagement of marriage. Neither the defendant nor the prosecutrix had expressed to her parents their intent to marry, and the mother admitted that she did not know of any such intent or plans. The defendant was not treated in the home as the daughter's fiancé. On the contrary, the mother regarded his visits "as any boy would go to see a girl." There was no gift of a ring or other token of their engagement. There were but four gifts of undetermined value, scattered over a period of about three years. Two of these were before the time of the alleged offense and two subsequent thereto. While the parents of the prosecutrix said that

the young couple appeared to be in love, the defendant did not object to her going with other boys and she frequently did so.

In *Riddleberger* v. *Commonwealth*, 124 Va. 783, 786, 97 S. E. 310, we held that the corroborating evidence is insufficient to support a conviction when it "is as consistent with the conclusion that there was no promise of marriage as with the conclusion that there was such a promise." Such is the case here.

For these reasons we find the evidence insufficient to sustain the verdict. Consequently, the judgment is reversed, the verdict set aside, and the case remanded to the lower court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*