COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Beales and Senior Judge Annunziata


SHARON RUTH TUCKER

                                            MEMORANDUM OPINION[*]

v.      Record No. 0037-12-4                           PER CURIAM
                                                  JULY 17, 2012

JOHN HARRISON CLARKE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge

(Sharon Ruth Tucker, *pro se*, on brief).

No brief for appellee.


Sharon Ruth Tucker (mother) appeals a custody order in which John Harrison Clarke (father) was awarded sole legal and physical custody. She argues that the trial court erred by (1) "employing an improper legal standard in exercising its discretionary function" by "operating under the incorrect presumption that the joint legal custody rights of the father and the mother were not equal under Virginia law"; (2) "interpreting the mother's exercise of her joint legal custody rights as 'interference,' and by finding that mother had 'interfered' with the ability of the father to get medical help for the child" and "penaliz[ing] the mother for having attempted to exercise a legal right that she had been granted under the 2009 custody order"; (3) "focus[ing] more on the emotional attributes of protective mothers than on the health and safety risks posed to a child" and "failing to make the welfare of the child its 'primary, paramount, and controlling consideration"; (4) "misapplying the hearsay rule and other rules of evidence and not allowing the mother to admit into evidence a number of e-mails . . . in order to explain her actions"; and (5) "finding that the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

father was meeting the basic needs of the child in terms of housing" because the staircase in father's apartment building violates safety code standards. Upon reviewing the record and mother's brief, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

On appeal, we view the evidence in the light most favorable to the party prevailing below. D'Ambrosio v. D'Ambrosio, 45 Va. App. 323, 335, 610 S.E.2d 876, 882 (2005) (citations omitted).

On October 14, 2009, the trial court ordered that father would have primary physical custody of the parties' child, and granted father "ultimate decision making authority in matters of education and daycare, but only after consultation with Defendant/Mother." Mother appealed the trial court's order, and this Court affirmed the trial court's ruling. See Tucker v. Clarke, Record Nos. 2496-09-4 and 2497-09-4 (Va. Ct. App. Feb. 22, 2011).

In April 2011, father filed a motion to modify custody and visitation and sought sole legal custody.[1] After hearing the evidence and argument for two days, the trial court issued its ruling from the bench. The trial court awarded sole legal and physical custody to father. The trial court specified that "father will have sole discretion regarding all major decisions that affect the child," and father shall inform mother of the decisions. The trial court also amended mother's visitation and, initially, ordered mother not to have any contact with the child's "babysitters, doctors, teachers, attorneys, or other professionals that are involved with the care of the child, except for in a case of a bona fide emergency."

Mother subsequently filed several motions for reconsideration and a pleading titled, "Objection to the Court's Findings and Request for Clarification." On December 1, 2011, the

---

[1] Mother also filed several motions, but they are not the subject of this appeal.

trial court entered an order denying mother's motions for reconsideration. Mother then filed several more motions for reconsideration and supplemental objections to the trial court's findings. On December 9, 2011, the trial court had a hearing for the entry of the final order. The trial court denied mother's additional motions for reconsideration. The trial court also modified mother's visitation, so that she had extended visitation if the child did not have school on a Friday or Monday during her weekend visitation. On December 13, 2011, the trial court entered the final order and sent it to the parties. The trial court eliminated mother's prohibition from contacting the child's babysitters, doctors, teachers, attorneys, or other professionals because it was not "practical nor in the best long-term interests of the child." Mother filed another motion for reconsideration, which the trial court denied on January 3, 2012. This appeal followed.

ANALYSIS

Custody: Issues 1, 2, and 3

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

Mother argues that the trial court applied an incorrect legal standard in determining what joint legal custody means. She also asserts that the trial court erred by interpreting her exercise of joint legal custody as "interference" and by focusing more on the emotional attributes of a protective mother, as opposed to the welfare of the child.

The General Assembly defined joint custody as follows:

> "Joint custody" means (i) joint legal custody where both parents
> retain joint responsibility for the care and control of the child and
> joint authority to make decisions concerning the child even though
> the child's primary residence may be with only one parent,
> (ii) joint physical custody where both parents share physical and
> custodial care of the child, or (iii) any combination of joint legal

and joint physical custody which the court deems to be in the best interest of the child.

Code § 20-124.1.

In 2009, the trial court detailed how joint custody would work for these parties when it awarded physical custody to father and joint legal custody to mother and father. Due to problems arising between the parties, the trial court ordered that father would have "ultimate decision making authority in matters of education and daycare, but only after consultation with Defendant/Mother." Mother appealed this ruling and argued that the trial court impacted her legal rights by granting father ultimate decision making authority. We disagreed. See Tucker v. Clarke, Record Nos. 2496-09-4 and 2497-09-4 (Va. Ct. App. Feb. 22, 2011).

In 2011, father sought to amend the custody arrangements because mother became a "constant obstructionist." She denigrated father in front of the child. She objected to the child's school and babysitters. She acted in an "uncooperative, inconsiderate, and disrespectful manner" toward the child's doctor in the child's presence. Her actions became so "disruptive and aggressive toward school personnel" that the school banned mother from the child's classroom during school hours. Furthermore, mother claimed that she wrote hundreds of e-mails to father, father's family, the child's teacher, and principal. She also interfered with the child's personal injury lawsuit.

On November 15 and 16, 2011, the trial court heard evidence and argument of the parents being unable to work together and make joint decisions for the benefit of the child. The trial court determined that father should be awarded sole legal and physical custody.

Code § 20-124.1 states, "'Sole custody' means that one person retains responsibility for the care and control of a child and has primary authority to make decisions concerning the child."

Contrary to mother's assertion, joint custody did not mean that she had "equal decision-making authority" because in 2009, the trial court narrowed the definition of joint legal custody and how it applied to mother and father. In 2011, the trial court determined mother's "interference with everything the father tried to do to help the child from medical care, to school, to day care," and her interactions with the professionals involved in the child's life were detrimental to the child. The trial court noted that mother's involvement in the child's life "interfere[d] with what's best for the child." The trial court specifically pointed to the "constant interaction by the mother with professionals that deal with the child in a way that alienates the professionals." Further, the trial court explained, "The e-mails that I've reviewed in this case make it very clear that the demand she makes upon the father and the other professionals involved with this child are immense, detailed and voluminous, and frankly impossible for professionals and the father to satisfy." The trial court correctly characterized mother's actions as interference and not simply being involved as a noncustodial parent. As the trial court explained, "Certainly, it is appropriate for the noncustodial parent to be involved and in many cases to be involved, but when that involvement interferes with what's best for the child, then an award of joint custody becomes problematic." Therefore, the trial court held that father would have "sole discretion regarding all major decisions that affect the child," and he should notify mother of the decision in writing "within a reasonable time of the decision being made."

The trial court properly focused on the best welfare of the child in reaching its decision. It did not use an improper legal standard in determining custody in this matter.

### E-mails: Issue 4

Mother argues that the trial court erred in not allowing her to admit into evidence e-mails regarding the child's teacher and principal because of hearsay.

During the trial, evidence came before the trial court that mother went to the child's classroom and called the teacher a liar in front of the children. Mother sought to introduce e-mails to explain her actions and why she acted the way she did. She argued that it showed her state of mind at the time. The trial court held that the e-mail was "written to third person after the incident and it is written by a party, it is a self-serving statement and it is not admissible on this ground." The trial court explained to mother that she could testify and explain her actions without asking the trial court to infer from the e-mails what she meant. Mother then proceeded to explain her actions to the trial court. She subsequently attempted to introduce her e-mails again, and father objected. The trial court sustained the objection because the e-mails were self-serving and mother testified about her actions.

"Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. A statement offered for any other purpose is not hearsay and is, therefore, governed by the other rules of admissibility." Garcia v. Commonwealth, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (*en banc*) (citation omitted). "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'" Braxton v. Commonwealth, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting Neal v. Commonwealth, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

"[T]he declarations of a witness made out of court are not admissible for the purpose of corroborating his testimony in court, for the reason that such evidence is hearsay." Atkins v. Commonwealth, 132 Va. 500, 510, 110 S.E. 379, 382 (1922) (citations omitted); see also Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567 (1976) (citation omitted).

Mother argues that the e-mails showed her state of mind at the time. In response to her argument, the trial court gave mother an opportunity to testify and explain why she called the teacher a liar and the circumstances arising from that situation. After hearing mother's

testimony, the trial court noted that the e-mails "could have been written at that time in consideration of the fact that you can use it in litigation" and found them to be self-serving. The trial court did not err in sustaining father's objection because the e-mails were self-serving and mother testified about her actions.

### Father's apartment building: Issue 5

Mother argues that the trial court erred in finding that father was meeting the basic needs of the child in terms of housing despite the fact that he lived in an apartment building with a staircase that violates building safety code standards.

Mother raised the same issue in her previous appeal. See Tucker v. Clarke, Record Nos. 2496-09-4 and 2497-09-4 (Va. Ct. App. Feb. 22, 2011). Mother argued that the trial court was not ensuring the safety of the child when it allowed the child to live with father in an apartment building where the staircase violated the building safety codes. In that appeal, the Court concluded that "the trial court considered the condition of the staircase . . . [and] did not abuse its discretion in awarding physical custody to father" without requiring father to move.

In this appeal, mother again challenges the trial court's custody ruling and contends father is placing the child's life at risk by living in the same apartment building. She asks this Court to order that the child not be permitted to enter father's apartment building until the staircase is repaired.

This fifth assignment of error is governed by the "law of the case" doctrine.

> The "law of the case" doctrine is well established in the courts of this Commonwealth. Under this doctrine,
>
>> [when] there have been two appeals in the same case, between the same parties, and the facts are the same, nothing decided on the first appeal can be re-examined on a second appeal. Right or wrong, it is binding on both the trial court and the appellate court, and is not subject to re-examination by either. For the purpose

> of that case, though only for that case, the
> decision on the first appeal is the law.
>
> Steinman v. Clinchfield Coal Corp., 121 Va. 611, 620, 93 S.E. 684,
> 687 (1917); see Uninsured Employer's Fund v. Thrush, 255 Va.
> 14, 18, 496 S.E.2d 57, 59 (1998); Chappell v. White, 184 Va. 810,
> 816, 36 S.E.2d 524, 526-27 (1946); Kemp v. Miller, 160 Va. 280,
> 284, 168 S.E. 430, 431 (1933).

Miller-Jenkins v. Miller-Jenkins, 276 Va. 19, 26, 661 S.E.2d 822, 826 (2008).

Here, the parties are the same, the facts are the same, and the assignment of error regarding the staircase is the same. The Court already has ruled on this issue; therefore, the ruling in the prior appeal is the law of the case.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.