# Richmond.

FARLEY v. THALHIMER.

January 26, 1905.

1. SLANDER—*Privileged Communications—Functions of Court and Jury.*—
Whether or not the occasion when alleged slanderous words were
spoken is privileged is a question for the court, but whether—there
being evidence tending to prove malice—the occasion was abused
and the words were spoken of malice, is a question for the jury,
which the court cannot take from them.

2. SLANDER—*P r i v i l e g e d  Communications—Violent Language—Actual
Malice—Question for Jury.*—If the defendant acts in the perform-
ance of a duty, legal or social, or in defense of his own interests,
the occasion is privileged, but strong or violent language, dispro-
portioned to the occasion, may raise an inference of malice and
destroy what would otherwise be a privilege. Whether such an
inference is to be drawn from the language used, or the circum-
stances under which it was uttered, is a question for the jury. The
questions of good faith, belief in the truth of the statement, and
the existence of actual malice, are for the jury.

3. SLANDER—*P r i v i l e g e d  Communications—Actual Malice—Burden of
Proof.*—If the communication be privileged, the burden is on the
plaintiff to prove actual malice in order to warrant any recovery
at all. The malice may be shown either by construction of the
words spoken, or by facts and circumstances connected therewith,
or in the situation of the parties adequate to authorize the con-
clusion.

Error to a judgment of the Circuit Court of the city of Rich-
mond, in an action of trespass on the case in slander, wherein
the plaintiff in error was the plaintiff, and the defendant in
error was the defendant.

Reversed.

The opinion states the case.

*Sands & Sands,* for the plaintiff in error.

*Meredith & Cocke,* for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

Plaintiff in error, Ellen J. Farley, a young lady of twenty-three years of age, was, on the 5th day of November, 1900, and for some months prior, in the employ, as a clerk or saleswoman, of Isaac & Moses Thalhimer, in their dry-goods store conducted on Broad street, in the city of Richmond, under the firm name of Thalhimer Bros., and on the morning of the 6th of November, 1900, she was discharged from her employment by Moses Thalhimer, on the alleged ground that she had on the day before been guilty of the theft of a handkerchief and two yards of ribbon from a different department of the store to that in which she was employed.

This action is brought by the plaintiff in error against the defendant in error, Moses Thalhimer, to recover damages for slanderous and insulting words, alleged to have been used by defendant in error on the occasion of the discharge of the plaintiff in error, and on a subsequent date, January 17, 1901, when she visited the store of Thalhimer Bros. to collect a balance due her on her salary at the time of her discharge.

The declaration contains four counts. The first count alleges that on the morning of November 5 plaintiff in error purchased at the store of Thalhimer Bros. a handkerchief and two yards of ribbon, and openly deposited the same in an open cabinet drawer until the evening of that day, when she carried them with her when she left the store after that day's employment; that on her return the next morning defendant in error called her "around to one side" of the store, and falsely and

maliciously said to a Miss Chisholm, another employee, in the presence of a Miss Allen and others, as follows: "Miss Chisholm, is this your friend? If so, I suppose you will be glad to cut the acquaintance of a common thief, won't you? That is what she is. Do you know what I would like to do with you, anyway? I would like to take you down stairs and have you stripped and take a cowhide and strike you from your head to your heels. There goes a thief, a thief." The second count alleges the same words as insulting, and tending to a breach of the peace. The third count sets forth that the plaintiff in error on January 17, 1901, went to the store of Thalhimer Bros. to secure the balance of her wages, and that then and there, in the presence of Mrs. A. L. Pugh, Mrs. James Farley, and others, defendant in error used the following words: "You won't get it. It took you a long time to find out that I owed you anything, and it will take you a still longer one to collect it. You know how to make it. Go ahead and make it. I see you are looking for trouble, and you can get it good, and plenty of it. I am fixed for you. I will let you down easy. I called you a thief before, and I call you one now, and a good one at that. That girl is a thief. I caught her stealing in my store, and I can prove it. If I had gone over to her mother's house I would have found out." The fourth count alleges the same words as insulting and tending to a breach of the peace.

Defendant in error responding to the demand of plaintiff in error for a statement of his defenses, answered: "First, not guilty; second, that while he did not use the language set forth in the declaration, he did accuse her of having stolen a handkerchief and a piece of ribbon from the store of Thalhimer Brothers; third, that the charge was true; fourth, privileged communications; and it is agreed as to the second defense the defendant bears the same responsibility as if a plea of justification had been entered formerly."

Opinion.

At the trial, after the evidence on both sides was offered, certain instructions were asked for, by both plaintiff in error and the defendant in error, in both sets of which the question, whether the words alleged as slanderous were spoken maliciously or not, was left for the determination of the jury, but the court rejected all of the instructions asked for, and gave in lieu thereof its own instruction, as follows:

"The jury are instructed that it appearing from all the evidence that the words charged in the first and second counts of the declaration to have been spoken by the defendant were, if spoken at all, spoken in the defendant's place of business to the plaintiff, or to one or more of his employees, and must be regarded as privileged communications.

"And it further appearing from all the evidence that the words charged in the third and fourth counts of the declaration to have been spoken by defendant, if spoken at all, were spoken to the plaintiff and her friends whom she had brought with her as participants with her in an interview sought by them with the defendant in his place of business—they must equally be regarded as privileged communications.

"And there being no evidence to justify an imputation to the defendant of actual malice, the jury must find for the defendant."

The jury returned their verdict in these words: "We, the jury, upon the issue joined, find for the defendant *upon the instructions* of the court."

It seems too well settled in this State to admit of extended discussion that while it is within the province of the trial court to determine whether or not the occasion when alleged slanderous or insulting words were spoken or written was privileged; whether they were spoken or written with or without malice is a question for the jury under proper instructions. *Dillard* v. *Collins*, 25 Gratt. 353; *Chaffin* v. *Lynch*, 83 Va. 106, 1 S. E. 803, s. c. *Ib.* 884, 6 S. E. 474; *Strode* v. *Clements*, 90 Va. 557,

19 S. E. 177; *Reusch* v. *Roanoke, &c. Co.*, 91 Va. 534, 22 S. E. 358; *Brown* v. *N. & W. R. Co.*, 100 Va. 619, 42 S. E. 664; *Tyree* v. *Harrison*, 700 Va. 542, 42 S. E. 295.

It is true, as was held in *Reusch* v. *Roanoke, &c. Co.*, *supra*, the court may properly refuse an instruction submitting the question of malice to the jury where *"there is no legal evidence in the record to suggest malice,"* but where there is evidence tending to show malice in the utterance of the words spoken, or in the published communication, that question cannot be properly taken from the jury.

"Where the defendant acts in performance of a duty, legal or social, or in defense of his own interests, the occasion is privileged, . . . . but strong or violent language, disproportional to the occasion, may raise an inference of malice, and thus lose the privilege that would otherwise attach to it." *Tyree* v. *Harrison*, *supra*.

It is also true, as contended by the learned counsel for defendant in error, that where the words complained of were privileged communications, the burden is upon the plaintiff to prove actual malice before he can be entitled to a recovery. The plaintiff in such a case must show malice, either by construction of the spoken or written matter, or by facts or circumstances connected with that matter, or in the situation of the parties, adequate to authorize the conclusion. *Dillard* v. *Collins*, *supra*. But, though the occasion is privileged, strong and violent language, disproportioned to the occasion, may raise an inference of malice, and thus obviate the privilege that would otherwise attach to it, and whether such an inference is to be drawn from the language used or the circumstances in which it is used, etc., is a question for the jury. The questions of good faith, belief in the truth of the statement, and the existence of actual malice remain also for the jury. *Tyree* v. *Harrison*, *supra*, and authorities cited.

As was said in the opinion in *Dillard* v. *Collins*, *supra*, "The

law holds the aegis of its protection not only over the person and property of the citizen, but vigilantly guards as equally sacred his personal reputation and character. And where one assails the character of his fellowman, and would secure himself from responsibility upon the ground that what he has spoken or written was only done confidentially and with no intent to injure, and without malice, he must be careful that what he said or wrote comes within the well-defined qualifications which the law attaches to confidential or privileged communications."

We do not mean to question at all the soundness of the ruling in *Reusch* v. *Roanoke, &c. Co., supra,* and other authorities cited and relied on by defendant in error, that the trial court may properly refuse an instruction submitting the question of malice to the jury "when there is no legal evidence in the record to suggest malice," &c., or may not instruct the jury in such a case that there is not such evidence in the record, but we do mean to say that when there is any legal evidence in the case tending to prove that the language spoken or written was disproportional in strength and violence to the occasion when spoken or written, though the occasion was privileged, which may raise an inference of malice, thereby destroying the privilege that would otherwise attach to it, the question of malice in the use of the words spoken or written cannot be properly taken from the jury.

As the case at bar has to be remanded for a new trial because of the error in not leaving to the jury the question whether the words alleged as slanderous were spoken maliciously or not, and in giving the court's own instruction, above set out, taking that question from the jury, we refrain from reviewing the evidence further than is necessary, in our opinion, to justify that conclusion.

It is an admitted fact that the plaintiff in error, on November 5, 1900, obtained a handkerchief and a piece of ribbon from the

stock of Thalhimer Bros., and carried them away with her that evening when she quit work. Therefore, an important question in the case was whether she paid for them, or took them without making payment. She claimed that she did pay for them, while defendant in error insisted that she did not. In her testimony she swears to the use of the words, and as to the circumstances in which they were used on November 6, 1900, as alleged in the first and second counts of the declaration, adding that defendant in error also said: "That accounts for the handkerchief you lost in the store that you said your mother had bought up the street that had our private mark on it." That when she was dismissed, defendant in error snatched a handkerchief from the front of her dress and followed her through the store, waiving the handkerchief, saying, "There goes a thief, a thief," and that when she was about to go out of the store he jumped in front of her and said, "Don't you ever dare, as long as you live, to darken those doors again."

As to the charge in the third and fourth counts of the declaration, plaintiff in error testified as follows:

"Well, on the 17th of January father was sick, and I was out of employment and could not get work, and I needed this money, and being on the street with my aunt, I asked her to go in with me as I asked Mr. Moses (Thalhimer) for the money, and she consented to go with me, and when we went in I asked for Moses Thalhimer—asked one of the girls—and when he came to me I told him that when he discharged me he owed me for a week and three days, and I had come for a settlement. He replied: 'You won't get it; it took you a long time for you to find out that I owed you anything, and it will take you still longer to collect it.' He says: 'You know how to collect it. Go ahead and collect it.' He says: 'I find you are looking for trouble, and you will get it. I let you down easy.' He said: 'You came into this store once before—for what?' He said: 'You had a gall to come in here before all these ladies who

know what you are.' He asked my aunt if she was my mother; she replied 'No.' He said: 'I caught that girl stealing in my store, and I can prove it. She is a thief, and a good one at that.' There were present Mrs. Pugh and my aunt, and there were two or three customers right near us. I don't remember who they were. They were near enough to turn around and listen to the conversation that passed. Then there was some other conversation, after which I left without getting the money."

The plaintiff in error was corroborated in her statement as to the occurrences of January 17, 1901, very fully by her aunts, Mrs. Pugh and Mrs. Farley, who accompanied her to Thalhimer Bros'. store, and to some extent, at least, by other witnesses as to the occurrences of November 6, 1900; while defendant in error, testifying in his own behalf, denied the use of the language charged in the declaration, and the statements made by plaintiff in error, but insisting that the charge he made, that the handkerchief and ribbon had been stolen, was true, and he is corroborated by other witnesses examined in his behalf. Therefore, there was a conflict in the evidence throughout on every material question in the case, and it was for the jury to determine the credibility of the witnesses and the weight to be given to their statements. In other words, there was evidence tending to sustain the theory of plaintiff in error, and hence the question of whether there was malice on the part of defendant in error should have been submitted to the jury.

We are, therefore, of opinion that the Circuit Court erred in taking from the jury the question, whether the words alleged as slanderous were spoken maliciously or not, and the judgment complained of must be reversed, and the cause remanded for a new trial to be had in accordance with this opinion.

*Reversed.*