# �civil 𝔚ichmond.

## G. E. AYLOR v. N. W. GIBBS.

### October 1, 1925.

1. LIBEL AND SLANDER—*Privileged Communications—Qualified or Absolute Privilege—Questions of Law and Fact.*—It is for the court to rule whether or not an occasion is a privileged one, and if it be one of privilege, whether a qualified or absolute privilege, and by its instructions to guide the jury to a right conclusion.

2. LIBEL AND SLANDER—*Privileged Communications—Qualified Privilege— Language Disproportioned in Strength and Violence to the Occasion— Malice.*—When the words complained of are uttered upon an occasion of quaified privilege, then in order to recover it must appear from the evidence that the language used was disproportioned in strength and violence to the occasion, or went beyond the exigency of the occasion, or that the occasion was abused to gratify the ill will of the defendant; in other words that the defendant was acting from actual malice. Strong and violent language or insinuation disproportionate to the occasion may raise an inference of malice and thus lose the privilege which might otherwise attach to the occasion.

3. LIBEL AND SLANDER—*Privileged Communications—Qualified Privilege— Malice.*—Where the language complained of was used upon an occasion of qualified privilege, and there were practically no circumstances from which it could be inferred that the privilege was in any way abused, and there was no testimony tending to show any prior grudge or ill feeling between the parties from which malice on the part of the defendant could be inferred a verdict for plaintiff can not be sustained.

4. LIBEL AND SLANDER—*Privileged Communications—Qualified Privilege— Questions of Law and Fact—Case at Bar.*—In the instant case, an action to recover for slanderous or insulting words, the occasion upon which the words were spoken was one of qualified privilege. The question at issue was whether the circumstances were such as to constrain the court to withdraw from the jury any finding as to the language used by the defendant being beyond the occasion or exigency, or unnecessarily defamatory of the plaintiff, and whether in what he said he was actuated by actual malice against the plaintiff. The testimony established the use of the language claimed to be defamatory and insulting by the defendant. There was some

evidence tending, though not conclusively, to show the existence of bad feeling on the part of the defendant towards plaintiff. The trial court ruled correctly in submitting to the jury the question arising upon the evidence as to whether the defendant was justified under all the circumstances in using the language concerning the plaintiff, which was complained of, and whether or not it was out of proportion to the occasion, viz: whether the language implying a charge of larceny was unreasonable and unfairly used by the defendant in the course of his investigations to ascertain who had stolen his money. The court was correct in submitting to the jury whether or not there was any prior ill feeling towards the plaintiff on the part of the defendant, which would justify an inference that in making the charge against the plaintiff he was inspired by actual malice. The evidence was not conclusive in favor of the plaintiff, but the connection of the plaintiff with the theft grew out of a comparatively trivial circumstance and the trial court did not err in refusing to take the case from the jury.

5. LIBEL AND SLANDER—*Privileged Communications—Qualified Privilege— Belief in Truth of Statements.*—If defamatory or insulting statements are made by one who did not believe them to be true. or had not reasonable or probable grounds for believing them to be true, this may be sufficient evidence to destroy the qualified privilege, and the case should be submitted to the jury. The same rule applies to unnecessary publicity or repetition of such statements.

Error to a judgment of the Circuit Court of Madison county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Edwin H. Gibson,* for the plaintiff in error.

*John S. Chapman* and *Geo. L. Browning,* for the defendant in error.

CRUMP, P., delivered the opinion of the court.

The plaintiff in error, G. E. Aylor, and the defendant in error, N. W. Gibbs, were neighbors, living on ad-

joining farms in Madison county. The plaintiff in error, Aylor, in addition to being a farmer was a merchant conducting a store at Aylor in said county.

An action was brought by Gibbs against Aylor to recover damages for slanderous and insulting words alleged to have been used by the plaintiff in error in November, 1922. The declaration contains two counts, one being apparently for slander at common law and the other based upon the statute relative to the use of words ordinarily construed as insults and tending to violence and breach of the peace. The spoken words, which the defendant in the action, Aylor, was alleged to have uttered in the presence of others are stated in the declaration in each count as follows: "It lay between N. W. Gibbs (meaning the said plaintiff) and John Cary, and that I know that N. W. Gibbs (meaning the said plaintiff) or John Cary got it; the said defendant, meaning either the plaintiff, N. W. Gibbs, or the negro John Cary had stolen the monies aforesaid."

It appears that in October, the preceding month, on a Sunday, Aylor's store had been robbed, his safe entered and between $50.00 and $60.00 stolen, including one note, being a $20.00 gold certificate, and the charge was that the words alleged to have been uttered by Aylor were uttered with reference to the person committing this robbery.

The evidence shows that Aylor, after the theft, endeavored to ascertain who the thief was, and that the alleged charge against Gibbs arose in that way.

Upon the trial the court held, and so instructed the jury, that the occasion in connection with which the words complained of were uttered was an occasion of qualified privilege, and that in order for the plaintiff to recover, the evidence should show that the defendant

availed himself of the occasion not to protect his interest or rights but to gratify his ill will and insult the plaintiff, and that whether an inference of malice was to be drawn from the language used, under all the circumstances appearing in evidence under which it was used, was for the jury to decide; further, that the question of good faith, of defendant's belief in the truth of the statements or insinuations, and the existence of actual malice under all the circumstances of the case, were matters for the jury to pass upon. In another instruction, the jury was given the usual standard as to the measure of damages in a case of this character, leaving them to find a verdict for the plaintiff if they believed that the qualified privilege had been abused as instructed by the court. These instructions were given at the instance of the plaintiff and the trial resulted in a verdict for the plaintiff for the sum of $1,250.00. Aylor, the defendant in the action, then obtained this writ of error.

In the petition only two errors are assigned; first, to the giving of the two instructions above mentioned, under which a recovery might be had by the plaintiff; and second, the refusal of the court to set aside the verdict of the jury and to grant the defendant a new trial.

[1] The parties will be referred to according to the relative positions they occupied before the trial court, where Gibbs was the plaintiff and Aylor the defendant. The defendant makes no objection to the language in which the two instructions were given, but insists that the evidence was not sufficient in any event to authorize the giving of instructions which would allow a recovery, and also that therefore the verdict should have been set aside on the ground that the evidence was insufficient to sustain it. The two assignments of error,

therefore, present for consideration by this court but one question, viz.: whether the evidence was sufficient to sustain a verdict in favor of the plaintiff notwithstanding the fact that the occasion upon which the words complained of were used was an occasion of qualified privilege. It is for the court to rule whether or not an occasion is a privileged one, and if it be one of privilege, whether a qualified or absolute privilege, and by its instructions to guide the jury to a right conclusion. No complaint is made of the action of the court holding that the occasion here was one of qualified privilege, nor is there any contention that the court failed to properly instruct the jury as to the circumstances under which the plaintiff can recover when the occasion is one of qualified privilege. It is stated in the record that the instructions were taken from the case of *Ramsay* v. *Harrison*, 119 Va. 682, 89 S. E. 977. Plaintiff in error contends that while correct in themselves, they are not applicable to the case here because the evidence was insufficient to show that the language used was disproportionate to the occasion of the privilege, or that there was any malice on the part of the plaintiff in error in uttering the words complained of.

[2] It is well recognized that when the words complained of are uttered upon an occasion of qualified privilege, then in order to recover it must appear from the evidence that the language used was disproportioned in strength and violence to the occasion, or went beyond the exigency of the occasion, or that the occasion was abused to gratify the ill will of the defendant; in other words, that the defendant was acting from actual malice. Strong and violent language or insinuation disproportionate to the occasion may raise an inference of malice and thus lose the privilege which might

otherwise attach to the occasion. *Ramsay* v. *Harrison*, *supra; Vaughan* v. *Lytton*, 126 Va. 671, 101 S. E. 865; *Robinson* v. *Van Auken*, 190 Mass. 161, 76 N. E. 601. And as to qualified privilege and evidence of malice, see the recent case of *Lightner* v. *Osborn*, 142 Va. 19, 127 S. E. 314.

We are to determine, therefore, whether the circumstances here were such as to constrain the court to withdraw from the jury any finding as to the language used by the defendant being beyond the occasion or exigency, or unnecessarily defamatory of the plaintiff, and whether in what he said he was actuated by actual malice against the plaintiff.

Several witnesses testified for the plaintiff, and for the defense there were two other witnesses besides the defendant. The defendant in his testimony gives the following account of the inception of the transaction. He says his store was robbed in October, 1922, between nine o'clock Sunday morning and nine o'clock Monday morning; the safe having been opened and among other monies a $20.00 gold certificate was taken. His wife discovered the robbery on going into the safe about nine o'clock Monday morning, he not being at home at the time; he did not think a stranger had committed the theft from the way in which it was done; at first he suspected a colored man named John Cary, but then found out that this man was not in the neighborhood at the time of the robbery. Subsequently, his brother, Wilmer Aylor, told him that he was on the wrong track; that from the rumors in the neighborhood a white man and a near neighbor had got his money. He then proceeds as follows: "I then remembered that I saw Gibbs talking to John Cary in front of John Cary's house, when I was going to church from my store; that when I got up to where they were, Gibbs

asked me if I had not met a white man going in the direction of my store; that he had met such a man dressed in khaki that looked like a convict. He said the man was trying to evade him and got out of the road into some bushes. I told him I had not seen him and I had made the trip twice, that is, gone over the road four times, as I had company there which I took to church. Just then Benton Gibbs, Newt Gibbs' brother, came along; he said he had not seen any man. Afterwards I asked a number of people and nobody had seen such a man as described by Gibbs."

The testimony further shows that the defendant went to see the Commonwealth's attorney, who told him that he did not have evidence enough to prosecute anybody, and it would be all right to notify the bank, to whom the money might be brought, to look out for the gold certificate. The defendant told the Commonwealth's attorney in this interview that he suspected Gibbs and Cary. The defendant then saw the cashier of the bank, told him to look out for the $20.00 gold certificate and that he suspected Newt Gibbs. The cashier of the bank testified that he perceived no malice towards Gibbs and it seemed to be an effort to catch the man who got the money. The testimony shows that Aylor repeated his suspicions of Gibbs to several other persons.

For the plaintiff it was proved by one witness, McAllister, a merchant in the neighborhood, that he knew both parties, and the plaintiff was a man of good character and that on the day after the November election, in 1922, Aylor came to him and called him into the back room of the store where there was no one present and asked him whether he (the witness) had heard that he (Aylor) had accused Newt Gibbs of breaking into his store, and whether he (the witness)

had told Gibbs; the witness said that he had not told Gibbs and that he had heard through his (the witness') partner that Aylor's wife had told his partner's mother to tell his partner to look out for a $20.00 gold certificate to be presented by Newt Gibbs; Mr. Aylor then said that he had not said that Newt Gibbs stole his money, but he had suspicioned Newt Gibbs of taking his money. He (the witness) then told Aylor that this was a very serious charge to bring against this boy; whereupon Aylor said: "I have a right to accuse Newt Gibbs of it; the taking of my money lies between Newt Gibbs and John Cary, a colored man; one or the other got my money."

Another witness for the plaintiff testified that he was a neighbor living on a farm nearby; he had heard that Aylor had lost some money a few days before election; Aylor called him back in McAllister's store on the 8th of November and said he suspicioned Newt, and he said: "It lies between Newt and John Cary as to who got my money." He (Aylor) told him (the witness) that his wife had told Rosser's mother to tell Rosser (meaning Wilmer Rosser, partner of the preceding witness) to look out for a $20.00 gold certificate; the witness states that he also told Aylor that he had better mind how he accused a man when he did not know. A third witness for the plaintiff testified that Gibbs was a man of good character and that Aylor told him that from what he had heard from others he had a right to suspect Newt. The testimony just referred to is evidently sufficient proof on the part of the plaintiff of the use of the language claimed to be defamatory and insulting. The plaintiff testified that he lived with his widowed mother; he worked on and managed their farm and looked after the details of that business; he states that the first time he

heard about Aylor losing his money was on election day and that he heard it was laid on him. He then states: "I tackled George Aylor about it on election day at Criglersville. He said about this man was one reason he suspected me. I told him that I had never stolen any money from anybody, and Mr. Aylor said: 'Hold on Newt, don't go so fast, your mother told me you took her money, that she had to hide her money from you.' "

There was some evidence tending, though not conclusively, to show the existence of bad feeling on the part of Aylor towards Gibbs. Witnesses testified to some trouble about a fence and the working of a road, and the defendant in his testimony said that the plaintiff did not treat him right about the road. With reference to testimony given by the plaintiff to the effect that the defendant told him that his (Gibbs') mother had told the defendant that he (Gibbs) had taken her money and that she had to hide her money from him, the mother (Mrs. Gibbs) testified that her son Newt was the manager of the farm and that the money made on the farm was used by Newt whenever he desired to pay off hands, bills and expenses; that she never meant to say that Newt ever stole money from her, but she did say she kept a separate pocket book and put it away for her own use, but that Newt was welcome to it any time he wanted it; she put it away to keep Newt from getting it, but she told him he might have it whenever he wanted it; she also testified that she did not tell Aylor that she did not blame him for suspecting Newt, Aylor having testified that Mrs. Gibbs had made such a statement to him.

The foregoing summary gives in outline a fair view of the circumstances out of which the suspicion of Gibbs being a thief grew, and of the subsequent occurrences, without going into further details of the evidence.

[3] It is held in Virginia that a verdict against a defendant in a case of this character cannot be sustained when there is no legal evidence to suggest malice. In the case of *Strode* v. *Clement*, 90 Va. 553, 19 S. E. 177, and in the case of *Reusch* v. *Roanoke, etc., Co.*, 91 Va. 534, 22 S. E. 358, verdicts for the plaintiff were set aside, but in both cases there was practically no circumstance from which it could be inferred that the privilege was in any way abused, nor was there any testimony tending to show any prior grudge or ill feeling between the parties from which malice on the part of the defendant could be inferred. In the case of *Farley* v. *Thalhimer*, 103 Va. 504, 49 S. E. 644, the court says, on page 508, 49 S. E. 646: "It is true, as was held in *Reusch* v. *Roanoke, etc., Co.*, 91 Va. 534, 22 S. E. 358, *supra*, the court may properly refuse an instruction submitting the question of malice to the jury where '*there is no legal evidence in the record to suggest malice*,' but where there is evidence tending to show malice in the utterance of the words spoken, or in the published communication, that question cannot be properly taken from the jury." The court further says: "It is also true, as contended by the learned counsel for defendant in error, that where the words complained of were privileged communications, the burden is upon the plaintiff to prove actual malice before he can be entitled to a recovery. The plaintiff in such a case must show malice, either by construction of the spoken or written matter, or by facts or circumstances connected with that matter, or in the situation of the parties, adequate to authorize the conclusion. *Dillard* v. *Collins*, 66 Va. (25 Gratt.) 353, *supra*. But, though the occasion is privileged, strong and violent language, disproportioned to the occasion, may raise an inference of malice, and thus obviate the

privilege that would otherwise attach to it, and whether such an inference is to be drawn from the language used or the circumstances in which it is used, etc., is a question for the jury. The questions of good faith, belief in the truth of the statement, and the existence of actual malice remain also for the jury. *Tyree* v. *Harrison, supra*, and authorities cited."

See also the later case of *Vaughan* v. *Lytton*, 126 Va. 671, 101 S. E. 865. The court there says, on page 682, 101 S. E. 868: "The cases of *Strode* v. *Clement*, 90 Va. 553, 19 S. E. 177, and *Brown* v. *N. & W. Ry. Co.*, 100 Va. 619, 42 S. E. 664, 60 L. R. A. 472, relied upon by counsel for defendant, are not in conflict with this conclusion, but, on the contrary, both of these cases recognize the rule that where there is room to doubt whether the language used is out of proportion to the occasion, or where there is extrinsic evidence of malice such as a previous grudge or quarrel, the jury must be permitted to pass upon the question."

[4] Applying these well settled principles of law to the case in hand, we are of opinion that the trial court ruled correctly in submitting to the jury the question arising upon the evidence as to whether the defendant was justified under all the circumstances in using the language concerning the plaintiff, which was complained of, and whether or not it was out of proportion to the occasion, viz: whether the language implying a charge of larceny was unreasonably and unfairly used by the defendant in the course of his investigations to ascertain who had stolen his money; and also that the court was correct in submitting to the jury whether or not there was any prior ill feeling towards the plaintiff on the part of the defendant, which would justify an inference that in making the charge against the plaintiff he was inspired by actual malice. The evidence,

it must be said, is not conclusive as to these matters in favor of the plaintiff, but considering the fact that the connecting of the plaintiff with the theft grew out of a comparatively trivial circumstance and considering all the evidence as to the subsequent acts and utterances of the defendant, we are satisfied that the court should not have taken the case away from the jury, the learned judge of the trial court having heard all the testimony as given by the witnesses, and having had the opportunity to observe their demeanor and deportment.

[5] If defamatory or insulting statements are made by one who did not believe them to be true, or had not reasonable or probable grounds for believing them to be true, this may be sufficient evidence to destroy the qualified privilege, and the case should be submitted to the jury. The same rule applies to unnecessary publicity or repetition of such statements. 37 C. J., pp. 83-84; *Lightner* v. *Osborn, supra,* 36 C. J., p. 1265.

It follows that we are of opinion that the judgment complained of is without error and it is therefore affirmed.

*Affirmed.*