# Staunton

## THE KROGER GROCERY AND BAKING COMPANY, INC. V. D. R. ROSENBAUM.

September 9, 1938.

Present, Campbell, C. J., and Holt, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*Fred B. Gentry* and *L. Preston Collins,* for the plaintiff in error.

*Warren & Cantwell, T. L. Hutton* and *H. E. Widener,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action was brought by the plaintiff, D. R. Rosenbaum, against the defendant, The Kroger Grocery and Baking Company, a corporation, under the following provision of section 5781 of the Code: "All words which from their usual construction and common acceptation, are con-

strued as insults and tend to violence and breach of the peace, shall be actionable. No demurrer shall preclude a jury from passing thereon."

There was a trial by a jury which resulted in a verdict and judgment in favor of the plaintiff, in the sum of $10,000, and this writ of error brings that judgment before us for review. The notice of motion alleges that in November, 1936, the plaintiff was an employee of the defendant in the meat department of its store located in the town of Marion; that one V. H. Dillon was meat inspector and supervisor of the activities of the plaintiff on behalf of the defendant; that Dillon, in the usual course of his employment and acting as agent of the defendant, said to the plaintiff in the presence of divers persons, "Rosenbaum, you are checked out." When asked by the plaintiff, "What for?" Dillon replied, "You got us for $100 last week."

The defendant pleaded the general issue of not guilty, and as grounds of defense, denied that the alleged slanderous words were actually spoken by Dillon; denied that the language relied upon was actionable *per se;* denied malice upon the part of Dillon; and also relied upon the defense that the occasion upon which the language was spoken was a privileged occasion.

The case of the plaintiff as shown by the record may be thus summarized: The plaintiff, at the time of the uttering of the alleged slander, was twenty-nine years of age. His father was a prominent land-owner residing in Washington county and was at the time postmaster at Glade Spring, Virginia. The plaintiff was a high school graduate and had been a student at Davidson College for two years prior to his employment by defendant, for whom he began working in October, 1935. His reputation for truth and honesty prior to this controversy was established by men of unquestioned character. It was also shown that a few days before he was dismissed by Dillon, he was married and had gone on his honeymoon. It was also shown that he had experience in the grocery business, having been employed by two Richmond firms. It was also shown that one

H. G. Young, a cousin of Dillon, was employed by defendant in a position inferior to plaintiff and that immediately upon the dismissal of plaintiff, Young was installed in his position. It also appears that plaintiff was unable to secure a similar position on account of his having been dismissed by defendant.

In the petition for a writ of error, defendant assigns twelve errors dealing with the action of the trial court in refusing to set aside the verdict of the jury, giving and refusing instructions, admitting and excluding evidence, permitting allegedly violent argument by counsel for plaintiff, refusing to set aside the verdict of the jury because it was contrary to the law and the evidence and refusing to set aside the verdict because excessive.

We have carefully considered each assignment and our opinion is that no reversible error was committed by the court in admitting or excluding evidence, or in giving and refusing instructions. The refusal of the court to strike plaintiff's evidence because it was insufficient to go to the jury on the question of actual malice upon the part of defendant, is earnestly challenged. It was held by the trial court and is conceded by plaintiff that the occasion upon which the alleged slander was uttered was a privileged occasion.

In *Montgomery Ward & Co.* v. *Nance,* 165 Va. 363, 182 S. E. 264, 271, Justice Chinn said:

"When it has been determined by the court that a defamatory communication was privileged, 'the question whether there was actual malice is for the jury to determine either from direct proof or as an inference from other proof or from the libel itself. In other words, the use which the defendant has made of his privilege,—that is, whether he has acted maliciously or not—is a question for the jury to decide.' 17 R. C. L. p. 329; *Farley* v. *Thalhimer,* 103 Va. 504, 49 S. E. 644."

This doctrine was recently approved by Justice Hudgins in *Taylor* v. *Grace,* 166 Va. 138, 184 S. E. 211, 213, in the following language:

"The plaintiff concedes the occasion was qualifiedly privileged, and contends that it should have been left to the jury to ascertain whether or not the privilege had been abused or whether or not the words were uttered with actual malice. In support of this contention, he quotes a recent expression of this court as follows:

" 'When it has been determined by the court that a defamatory communication was privileged, "the question whether there was actual malice is for the jury to determine either from direct proof or from the libel itself. In other words, the use which the defendant has made of his privilege—that is, whether he has acted maliciously or not—is a question for the jury to decide. 17 R. C. L. p. 329; *Farley* v. *Thalhimer,* 103 Va. 504, 49 S. E. 644." ' " See authorities cited.

In view of the holding of the court and concession of counsel, the pivotal question is whether or not there is credible evidence sufficient to establish that there was undue or excessive publication of the alleged slander, or that the words spoken were uttered in malice.

The plaintiff testified that at the time he was discharged, Dillon, agent of defendant, said to him: "Rosenbaum I will have to check you out." Plaintiff responded: "Checking me out, firing me? You are joking with me," Dillon said, "No I am checking you out." Plaintiff then said to Dillon, "What are you checking me out for?" Dillon replied, "You got us for $100 last week."

The effect of this conversation upon plaintiff is thus detailed by Dillon: In answer to the question, "Whatever you did say to him made him mad didn't it?" he replied, "Seemed to make him terribly mad * * *. As far as I could tell he was out of his head." It also appears that three days prior to the utterance of the alleged slander, Dillon, in a conversation with Clyde Rosenbaum, a brother of the plaintiff, stated that plaintiff cost him $84.00 by getting married and that "figures don't lie." Again it appears from the testimony of a Mrs. Collins that it was the general impression in the town of Marion that plaintiff was discharged by de-

fendant for misappropriating money, and that, in a conversation with Dillon, this impression was borne out by him. Then, too, the fact that Dillon immediately gave plaintiff's former position to one of his (Dillon's) relatives was a circumstance bearing on the question. The record further discloses that notwithstanding the fact that the defendant only entered a plea of not guilty, it introduced nine witnesses who testified that plaintiff was the originator of a scheme to steal from Armour & Company's truck when it delivered meat to defendant; that plaintiff paid his board bill with goods purloined from the store of defendant; that plaintiff offered a witness money to testify in his behalf, etc. In short, defendant attempted to prove that plaintiff was guilty of committing fourteen different crimes while in its employ.

In a written memorandum filed with the record, the trial court said: "Although the defendant insisted that its agent Dillon did not intend to accuse the plaintiff of stealing or of dishonesty, and filed no plea of justification, it introduced witnesses whose testimony, if believed, would make the plaintiff a most despicable character and a very dangerous type of thief. If the jury had believed these witnesses, the plaintiff's reputation would have been ruined forever whether the insulting words charged to defendant were spoken in the first instance or not."

The rule that the statements and conduct of a defendant after the utterance of a slander is admissible to show malice, is unquestioned. In the syllabus to the case of *Williams Printing Co.* v. *Saunders,* 113 Va. 156, 73 S. E. 472, Ann. Cas. 1913E, 693, this is said: "In actions of slander or libel, other slanderous words, spoken or written of the plaintiff, whether before or after those laid in the declaration, may be given in evidence, to show malice on the part of the defendant when that is an issue in the case."

There is no error in the action of the trial court in submitting the question of malice to the jury.

It is the further contention of defendant that the court

erred in refusing to set aside the verdict of the jury because it was excessive.

In *Boyd* v. *Boyd,* 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173, this court considered the question of alleged excessive damages awarded in an action for insulting words. In discussing the question, Judge Buchanan said (page 111):

"This was an action for insulting words. In such cases there is no rule of law fixing the measure of damages, nor can it be reached by any process of computation. Where that is the case, the general, if not the universal, rule in this State is, that the verdict of the jury will not be set aside unless it is so grossly excessive (or inadequate) as to indicate that the jury in rendering it were actuated by prejudice, passion or corruption, or that they have been misled by some mistaken view of the merits of the case. *Southern Ry. Co.* v. *Smith,* 107 Va. 553, 560, 59 S. E. 372, and cases cited; *Norfolk & W. Ry. Co.* v. *Shott,* 92 Va. 34, 47 [48], 22 S. E. 811; *C. & O. Ry. Co.* v. *Harris,* 103 Va. 635, 643, 49 S. E. 997.

      \*     \*     \*     \*     \*     \*     \*

"The damages awarded do seem large, but that was a question especially for the jury. By the statute giving a right of action for insulting words, when first enacted, it was provided that 'No plea, exception or demurrer shall be sustained \* \* \* to preclude a jury from passing thereon who are hereby declared the sole judges of the damages sustained.' Act July 26, 1810 (Acts 1809-10, ch. 10); 4 Min. Inst. (1st Ed.) 383. While that provision in the statute has been changed so as to provide merely that 'No demurrer shall preclude a jury from passing thereon' (the insulting words), and the court has the power to correct any manifest departure from right and justice on the part of the jury, still the jury is regarded as the best and safest tribunal to determine not only the character of the alleged insulting words, but also the measure of damages. *Corr* v. *Lewis,* 94 Va. 24, 26, 26 S. E. 385."

In our investigation of the Virginia decisions it appears that the damages awarded in the instant case are the largest awarded in any case considered by this court. It may be said here, as was said in the *Boyd Case, supra,* that the damages awarded do seem large, but an examination of the record affords an answer to the contention that the jury were actuated by prejudice or passion. Under the plea of not guilty, filed by defendant, it was limited in its defense to the narrow issue of utterance of the alleged slander and whether or not the language employed was sufficient to base an action thereon. But the defendant was not content to rely upon that defense. It undertook, without incurring the risk of a plea of justification, to wreck the character of the plaintiff by painting him as a criminal incarnate and guilty of fourteen different crimes, ranging from petty larceny to subornation of perjury.

In the face of the excellent character of the plaintiff, as testified to by his neighbors, the jury declined to be made a party to this effort of the defendant.

The amount sued for was $25,000. It has been suggested that this court has the power to reduce the verdict. This power, if such power in reality exists, has not been heretofore exercised, and if a trial by a jury is to be maintained, we are of opinion that this suggestion cannot be entertained.

In *Judd* v. *Commonwealth,* 146 Va. 267, 135 S. E. 710, 713, Judge Burks said: "We know of no safer way of settling a question about which the principal parties are in conflict, and greatly tempted to prevaricate, than by the verdict of an impartial jury, under proper instructions of the court."

If there is to be a new rule for the ascertainment of damages in a case of insulting words, under the statute, it must be declared by the General Assembly and not by the appellate court.

We find no error in the judgment of the trial court and it is, therefore, affirmed.

*Affirmed.*

Holt, J., dissenting.

As I see it, there are two reversible errors in this record. They are these:

*First:* Instruction No. 2, given for the plaintiff.

*Second:* An excessive verdict and judgment.

This is Instruction No. 2:

"Every man is intended to mean the natural and probable consequences of his acts, and is bound to answer for such consequences, and it is not necessary to render the acts complained of malicious that V. H. Dillon should have been actuated by feelings of hatred or ill will toward the plaintiff, or that he entertained or pursued any bad purpose or design. On the contrary he may have been actuated by a general good purpose and have had a real and sincere desire to bring about the reformation of matters or conditions, but in pursuing that design if he willfully inflicted a wrong upon the plaintiff which was not warranted by law, such acts are malicious in law and are in themselves injurious."

The defendant owns and operates a chain of grocery stores, which are inspected from time to time. An inspector in the line of this legitimate duty came to examine its affairs and the accounts of its manager. That examination appeared to show that he was short in his acounts. The inspector told him that from his examination this shortage did appear.

This communication was privileged; being privileged, no liability could attach unless that privilege was abused, and yet the court told the jury that malice in law might be inferred even if the privilege had not been abused. And even though the jury should believe that this statement of the inspector to the manager was without any "bad purpose or design" and was in fact "actuated by general good purpose."

Of course an inspector or an auditor, upon an examination, "actuated by general good purpose," may tell the manager what that examination seemed to indicate, and this, without more, can in no possibility impose any liability upon

him. It is only when this privilege is abused that liability attaches. Of course a man actuated by good motives could in fact not be actuated by bad motives, and if actuated by good motives the inspector's conduct was willful only in that he willed to tell the manager the results of his examination. To this privileged communication it was necessary to superadd something before malice could be inferred as a matter of law.

If this were not the law, the calling of these examiners and accountants would be hazardous indeed. Moreover, it might work an injustice on the employee, for the only course which the master might pursue with safety would be to discharge him without any assignment of reasons therefor. It might well be that were the reasons stated, the apparent shortage could be satisfactorily explained and the employee would not be discharged at all.

It may be conceded that there is evidence in the record from which malice might be inferred, but it must also be conceded that the jury, without looking to this evidence, might have found that these spoken words, spoken in good faith, established malice as a matter of law.

The verdict is excessive.

In *C. & O. Ry. Co.* v. *Arrington*, 126 Va. 194, 101 S. E. 415, 423, Prentis, J., said:

"The law wisely leaves the assessment of damages, as a rule, to juries, with the concession that there are no scales in which to weigh human suffering, and no measure by which pecuniary compensation for personal injuries can be accurately ascertained. Nevertheless, it is an ancient and accepted doctrine of the common law, that judges have the power and are clearly charged with the duty of setting aside verdicts where the damages are either so excessive or so small as to shock the conscience and to create the impression that the jury has been influenced by passion or prejudice, or has in some way misconceived or misinterpreted the facts or the law which should guide them to a just conclusion."

He also said:

"In such a case as this, where the amount of the verdict is attacked because it is so unusual, it is proper to make comparisons with the verdicts which other juries have found in other cases for similar injuries; for while each case must be determined by its own facts, it is nevertheless true that the verdicts of other juries which have been approved by the courts, represent the common or average judgment of mankind as to the proper recovery in such cases."

In slander and libel cases there is no rule for fixing the measure of damages and that measure cannot be reached by any process of computation, just as there is no rule by which we can "weigh human suffering." But an excessive verdict in either case should be set aside. *Boyd* v. *Boyd,* 116 Va. 326, 82 S. E. 110, Ann. Cas. 1916D, 1173.

We have often had occasion to consider cases of a character like that in judgment. They indicate the average judgment of Virginia juries:

*Strode* v. *Clement,* 90 Va. 553, 19 S. E. 177 . . . . . $   900.00
*Ramsay* v. *Harrison,* 119 Va. 682, 89 S. E. 977 . .   2,500.00
*Vaughan* v. *Lytton,* 126 Va. 671, 101 S. E. 865 . .   3,500.00
*Aylor* v. *Gibbs,* 143 Va. 644, 129 S. E. 696 . . . . . .   1,250.00
*Wright* v. *Cofield,* 146 Va. 637, 131 S. E. 787 . . . .   1,000.00
*W. T. Grant Co.* v. *Owens,* 149 Va. 906, 141 S. E. 860 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   900.00
*Jordan* v. *Melville Shoe Corp.,* 150 Va. 101, 142 S. E. 387 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3,500.00
*Powell* v. *Young,* 151 Va. 985, 144 S. E. 624, 145 S. E. 731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1,000.00
*Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874, 156 S. E. 429 . . . . . . . . . . . . . . . . . . . . . . . . . .   7,057.15
*Rosenberg* v. *Mason,* 157 Va. 215, 160 S. E. 190 .   1,000.00
*Snyder* v. *Fatherly,* 158 Va. 335, 163 S. E. 358 . .   1,500.00
(two trials) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3,000.00
*Weatherford* v. *Birchett,* 158 Va. 741, 164 S. E. 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2,000.00
*Montgomery Ward & Co.* v. *Nance,* 165 Va. 363, 182 S. E. 264 . . . . . . . . . . . . . . . . . . . . . . . . .   5,000.00

*Peoples Life Ins. Co.* v. *Talley,* 166 Va. 464, 186
   S. E. 42 ................................$  600.00

This verdict goes well beyond "the common or average
judgment of mankind as to the proper recovery in such
cases."

EGGLESTON, J., concurs in this dissent.