# Robert G. Oberbroeckling

## v.

# Roger Lyle, et al.

Record No. 841172

November 25, 1987

Present: All the Justices

*Randolph H. Watts (Richard, Moncure, Watts & Amole*, on briefs), for appellant.

*Russell H. Roberts (Steven W. Bancroft; Roberts & Ashby; Lewis & Trichilo*, on brief), for appellees.

COMPTON, J., delivered the opinion of the Court.

This is a defamation case among private individuals and a private corporation arising from an employer-employee relationship. The controlling question is whether the trial court erred in ruling that the evidence was insufficient to establish the requisite malice to recover upon a qualifiedly privileged communication.

The controversy arose from the management of Lake Land'Or, a recreational community in Caroline County. Appellee Lake Land'Or Property Owners Association, a Virginia corporation and a defendant below, was formed in the mid-1970s. The Association had approximately 2,000 property owners or members, of whom 1,000 were homeowners. The community consists of approximately 2,000 acres with 30 to 35 miles of private roads. There are large lakes, tennis courts, swimming pools, a clubhouse, and other recreational facilities. The Association is governed by a Board of Directors elected by its members. The Board in turn elects the officers.

In 1976, the Board decided to retain a full-time property manager to administer the daily operations of the Association. Appellant Robert G. Oberbroeckling, a property owner in the community and the plaintiff below, was hired for the position and served

for about five and one-half years. For the first five years, he worked without written rules or directives from the Board. He supervised an annual budget of approximately $250,000, had authority to issue Association checks of up to $3,000 on his signature alone, invested the Association's funds, collected dues from property owners, bought supplies for the Association, and paid its bills.

In addition to financial management duties, the plaintiff spread gravel on the roads, plowed snow from the roads, cleaned ditches, mowed grass, cleaned and painted swimming pools, and generally responded to complaints and requests from property owners. Also, during his tenure, the plaintiff purchased numerous items of equipment for the Association, including motor vehicles. The plaintiff's compensation included an annual salary and bonus, as well as personal use of Association vehicles and equipment.

During the latter part of 1981 and early 1982, a dispute arose between the plaintiff and the Board, which at that time was under the leadership of appellee Roger Lyle, another defendant below. Lyle served as president of the Board for two years after becoming a member in 1979. Some Board members began to question the plaintiff's personal use of Association equipment, including motor vehicles; his purchasing procedures; and his job performance generally. In December 1981, the Board issued 13 written directives to the plaintiff. Also, the Board examined the plaintiff's December 1981 purchase of a new pick-up truck with Association funds. The Board claimed that the plaintiff had exceeded Board authorization by spending an extra $952 for air conditioning and deluxe tires for the truck.

On January 25, 1982, Lyle delivered to the plaintiff a memorandum, which is the basis for this suit, and another set of written directives. The memo, dated January 25 and written on Association stationery, read as follows:

MEMO FOR:   Robert G. Oberbroeckling
            Property Manager
            Lake Land'Or Property Owners
            Association

The attached memo to you has been drawn up per your request for specific management directives. You are hereby notified that you are being placed on probation as a result of the mismanagement of funds and personnel brought to your

attention at the executive meeting of the Board of Directors on January 23, 1982.

Upon receipt of this memorandum, you have the option of fully complying with these directives or terminating your employment as property manager with Lake Land'Or Property Owners Association.

You are given five (5) days from the date of this memorandum to complete, sign, and date the portion below indicating your intentions and return this original memorandum to the President of the Board of Directors for filing with the Corporation minutes.

/s/Roger H. Lyle
Roger H. Lyle
President
Board of Directors

[ ] I will fully comply with the directives in the memorandum dated January 25, 1982 attached hereto.

[ ] I will terminate my employment this date.

Robert G. Oberbroeckling

_____
Date

RHL/ml
Encl.
cc: Each Board Member

The Board eventually terminated the plaintiff's employment and Lyle was named acting property manager. Shortly after Lyle assumed the plaintiff's duties, Lyle was overheard to state to a property owner that the plaintiff "was a lying, cheating, SOB; that he [Lyle] got him; that he crucified him; that he tacked him to the wall."

Subsequently, the plaintiff filed a multi-count motion for judgment, asserting several theories, seeking recovery of compensatory and punitive damages against the Association and Lyle, as well as other persons not involved in this appeal. Following presentation of the plaintiff's evidence during a jury trial, the court sustained a motion to strike and dismissed all counts of the plaintiff's complaint except one. The court also dismissed all defendants, includ-

ing the Association, except Lyle. The case proceeded to the jury on the plaintiff's defamation claim against Lyle based on the January 1982 memorandum.

The trial court ruled that Lyle's statement was qualifiedly privileged. The court's instructions to the jury were largely free of objection. Factual issues put to the jury included whether Lyle made the alleged statement about the plaintiff, whether the statement was defamatory and false, and whether Lyle abused the privilege or whether the statement was made with actual malice.

The jury found in favor of the plaintiff and assessed compensatory damages of $75,000 and punitive damages of $25,000 against Lyle. Subsequently, the trial court sustained Lyle's motion to set aside the verdict. The court ruled that "as a matter of law, clear and convincing proof was not adduced at trial showing that Roger Lyle's statements in the January 25, 1982 documents were made with malice or with a reckless disregard." We awarded the plaintiff this appeal against Lyle and the Association from the May 1984 order which entered judgment in favor of all defendants.

Even though the parties debate a number of issues, only two questions are viable on appeal. The other issues discussed by the parties have been resolved in favor of the plaintiff by the jury based on instructions that were essentially free of objection.

The first question: Did the plaintiff establish with the requisite degree of proof a jury issue on whether Lyle's statement, accusing the plaintiff of mismanagement of funds, was made with malice or with a reckless disregard for the truth? This issue, of course, is relevant to the compensatory damage recovery as well as the punitive damage award.

In a case such as this, where the trial court has set aside a jury verdict for the plaintiff, the verdict is not entitled to the same weight as one which has been approved by the court. *Baird* v. *Dodson Bros. Exterminating*, 217 Va. 745, 749, 232 S.E.2d 770, 773 (1977). But such a verdict must be reinstated and judgment rendered on the verdict if we find any credible evidence in the record that supports the jury's finding. *Graves* v. *Nat. Cellulose Corp.*, 226 Va. 164, 169, 306 S.E.2d 898, 901 (1983). In viewing the evidence, we accord the plaintiff benefit of all substantial conflicts in the evidence and all reasonable inferences that may be drawn from the evidence. *Matney* v. *Cedar Land Farms*, 216 Va. 932, 934, 224 S.E.2d 162, 163 (1976).

■ The trial court correctly instructed the jury that the burden of proving malice for the purpose of defeating a qualified privilege is by clear and convincing evidence. *See Great Coastal Express* v. *Ellington*, 230 Va. 142, 154, 334 S.E.2d 846, 854 (1985). Clear and convincing evidence is that degree of proof which produces in the mind of the trier of facts a firm belief or conviction upon the allegations sought to be established. It is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable doubt. It does not mean clear and unequivocal. *Walker Agency & Aetna Cas. Co.* v. *Lucas*, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975).

■ Without objection by the defendant, the trial court instructed the jury that the plaintiff could recover if he proved that the statement in issue was made with "actual malice."* According to this instruction, which became the law of the case, a statement is made with the requisite malice when uttered "because of some sinister or corrupt motive such as hatred, ill will or desire to hurt the plaintiff" or "was made so recklessly as to amount to a willful disregard for the truth" or "was made with knowledge that it was not true." Consequently, if there is any credible evidence which clearly and convincingly establishes a pertinent element of the instruction, the verdict must be reinstated.

■ We hold that the evidence was sufficient to create a jury issue upon whether Lyle acted with ill will or a desire to hurt the plaintiff and whether the words were employed so recklessly as to amount to a willful disregard for the truth. The jury found that the "mismanagement of funds" memorandum was defamatory because, according to the language of the pertinent instruction, the words "in their normal usage would be construed to mean that [the plaintiff] was unfit to perform the duties of his employment" or "lacked integrity" or "was dishonest in performing the duties of his employment." *See Fleming* v. *Moore*, 221 Va. 884, 889-90, 275 S.E.2d 632, 636 (1981). The word "mismanagement" means "corrupt or improper management." Webster's Third New International Dictionary 1444. The record reveals a combination of facts from which a jury could find that the foregoing statement was uttered with malice.

* We have labelled the type malice pertinent here "common-law malice." *Great Coastal*, 230 Va. at 154, 334 S.E.2d at 854; *The Gazette* v. *Harris*, 229 Va. 1, 18, 325 S.E.2d 713, 727, *cert. denied*, 472 U.S. 1032, 473 U.S. 905 (1985), *cert. denied*, 479 U.S. ____, 107 S.Ct. 291 (1986).

For example, the record shows that the plaintiff for about five years had been a trusted, efficient manager of the recreational community and that he performed his duties in an exemplary manner. After Lyle became president of the Board, relatively minor alleged failures by the plaintiff became a major topic of discussion among some Board members, particularly Lyle. During December 1982 and January 1983, a series of confrontations at meetings of the Board occurred between the plaintiff and Board members, particularly Lyle. After the plaintiff received the "mismanagement of funds" memorandum, he refused to sign the paper, which had been circulated to Board members, because he objected to the accusation that he had mismanaged funds. He thought that he was being accused of having committed fraud.

Subsequently, at a Board meeting held on January 30, 1982 termed "humiliating" to the plaintiff, he was forced to check one of the boxes at the foot of the memorandum. He checked the first box. Immediately, Lyle said to the members that he would entertain a motion that the plaintiff's employment be terminated. The motion was made and seconded. Thereupon, the plaintiff checked the other box on the memorandum because, he said, it was obvious that the Board was about to fire him and because he wanted to "get out" of the meeting before he "hit somebody." The jury could have concluded that Lyle intentionally orchestrated the discharge of the plaintiff and that the firing was planned before the meeting of January 30, even though the plaintiff had indicated after receipt of the January 25 memorandum that he desired to retain his position. Indeed, the evidence showed that Lyle on January 28 had obtained from an attorney precise language to be used in a letter of termination.

█ Promptly after the January 30 meeting, Lyle succeeded temporarily to the plaintiff's job as property manager at an annual salary of $26,000. Shortly after assuming those duties, Lyle made the "SOB" statement. In view of the circumstances, the jury was justified in concluding that Lyle had a clear motive to "get" the plaintiff. That utterance and the other circumstances demonstrated ill-will and could reasonably be construed to indicate that the plan to injure the plaintiff in his employment had been successful. It is settled that statements and conduct of a defendant after an allegedly defamatory utterance are probative to show malice. *Kroger Grocery Co.* v. *Rosenbaum*, 171 Va. 158, 163, 198 S.E. 461, 463 (1938).

On February 6, 1982, an open meeting attended by 50 to 60 property owners was held. The "mismanagement of funds" memorandum was read to the group. Because of concern that the Board had dismissed the property manager, "and it really didn't know what it was doing," one of the owners suggested that an *ad hoc* committee be formed to render an objective report on the controversy. The committee reported in April 1982 and found there was "no evidence" to indicate that the plaintiff had utilized Association funds for purposes other than for expenditures that were in the best interests of the Association, "i.e., there was no personal financial gain." The committee recommended that Lyle "voluntarily remove himself" from participation in Association business activities for at least one year "to provide a needed cooling-off period for all parties concerned." In addition, the committee recommended that the plaintiff be considered for the position of property manager in competition with other applicants for the vacancy. The plaintiff was not reemployed by the Association.

The foregoing are but a few of the circumstances which, when viewed together, furnished clear and convincing evidence for the jury to conclude that the "mismanagement of funds" statement was false and that Lyle uttered the statement so recklessly as to amount to a willful disregard for the truth.

As in *Great Coastal*, the instructions in the present case pertaining to defeat of a qualified privilege included a requirement that the jury find *New York Times* malice in order to award punitive damages, that is, clear and convincing proof of knowing publication of a falsehood or reckless, willful disregard for the truth. 230 Va. at 155, 334 S.E.2d at 854. Therefore, for the reasons noted above, the proof was sufficient to raise a jury issue on both compensatory and punitive damages. Upon the punitive damage award, we have made an independent determination that the evidence in the record is sufficient to support a finding of *New York Times* malice by clear and convincing evidence. *Great Coastal*, 230 Va. at 156, 334 S.E.2d at 855. Therefore, we conclude that the trial court erred in setting the verdict aside.

This brings us to the second question: Did the trial court err in granting the Association's motion to strike and dismissing it as a party defendant at the conclusion of the plaintiff's evidence? We hold that it did not.

We recognize the rule that generally corporations may be liable for compensatory damages for defamatory statements

which are uttered by an agent while engaged in the scope of his employment and which grow out of an act connected with the employment. *W. T. Grant Co.* v. *Owens*, 149 Va. 906, 913, 916, 141 S.E. 860, 862, 863 (1928). And, in connection with a qualifiedly privileged defamatory communication, corporations may be liable for compensatory and punitive damages if the agent's malicious conduct either was authorized by the principal or subsequently was ratified by it. *See Sun Life Assurance Co.* v. *Bailey*, 101 Va. 443, 450, 44 S.E. 692, 694 (1903).

In the present case, however, the crucial evidence clearly and convincingly demonstrating malice was the oral comment by Lyle that the plaintiff was a "lying, cheating, SOB," that Lyle (not the Association) "got" and "crucified" the plaintiff, and that Lyle individually "tacked" the plaintiff "to the wall." These comments were not authorized by the Association and were not subsequently ratified by it.

Accordingly, the trial court's action in entering judgment for the Association will be affirmed. But the court's action in setting aside the verdict and entering judgment for Lyle will be reversed. The verdict will be reinstated and final judgment will be entered here on the verdict for compensatory and punitive damages in favor of the plaintiff against Lyle.

*Affirmed in part,*
*reversed in part,*
*and final judgment.*