COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Bumgardner and Lemons
Argued at Salem, Virginia


BEVERLY P. EGGLESTON, IV
                                    MEMORANDUM OPINION* BY
v.        Record No. 0670-98-3      JUDGE SAM W. COLEMAN III
                                          MARCH 16, 1999
VIRGINIA DEPARTMENT OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
                    Charles B. Flannagan, II, Judge

            (Barry L. Proctor, on brief), for appellant.

            Donald G. Powers, Assistant Attorney General
            (Mark L. Earley, Attorney General; Ashley L.
            Taylor, Jr., Deputy Attorney General;
            Siran S. Faulders, Senior Assistant Attorney
            General, on brief), for appellee.


     The Virginia Department of Social Services (DSS) received a

complaint alleging the sexual abuse of M, a four-year-old girl,

by her father, Beverly P. Eggleston.  Eggleston appeals the

decision of the circuit court affirming a DSS determination of

"Founded, Sexual Molestation -- Level 1."  The issues on appeal

are whether the evidence is sufficient to support the agency's

finding that (1) the alleged touching occurred, (2) Eggleston's

contact with the victim was "for arousal or gratification of

sexual needs or desires" as required by the DSS definition of

sexual molestation, and (3) the injury/condition resulted in, or

was likely to result in, serious harm to the child giving rise to

"level 1" molestation.  On review of the record, we determine

––––––––––––––––––––
        *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

that substantial evidence supports the decisions of DSS and accordingly, we affirm the circuit court's ruling.

## I.  BACKGROUND

Karen Hardie and Beverly Eggleston, M's parents, were separated on the date of the alleged offending contact and were pursuing an amicable divorce.  Hardie, M's mother, testified that one day after M spent the night with Eggleston, she noticed that M's vagina was red and irritated.  When asked, M attributed the condition to poison oak.  The following evening, as Hardie bathed M, M referred again to the poison oak.  M stated that Eggleston tried to "suck out the poison oak" and that he "tried to suck out the owie from the chicken pox" lesions.  M had several healing chicken pox lesions, two of which were on her vaginal area and two were on her feet.  At that point Hardie retrieved a personal journal that she maintained and began recording M's exact words:

> He tries to love it and bite it and kiss it.
> My bahooney.  He scratches it with his
> whiskers.  No.  He tries to bite it and eat
> it. And tries to put his whiskers on it and
> eat it up and get it off.  That's not right
> is it Mommy? . . . I told him not to scratch
> my bahooney cause it would make me cry.

Hardie testified that at that point M became anxious and stated that she was experiencing pain on her feet where Eggleston had tried to "suck out the chicken pox."  After Hardie dried M, M began licking Hardie's face; she placed her tongue in Hardie's ear, and licked Hardie's tongue.  When Hardie asked M if she kissed Eggleston that way, M replied, "All the time, when we kiss with tongues we do it like grown ups."

Hardie related M's statements to her counselor seven days after the alleged sexual abuse, and the counselor notified Child Protective Services (CPS). Hardie had M examined by a physician ten days after the alleged abuse, and the examination revealed no evidence of sexual abuse. CPS worker Wendy Davidson investigated the complaint. She testified that M told her "about things that her father had done to her including tickling her privates."[1] Davidson referred M to Julie Tinsley, a Licensed Clinical Social Worker. According to Davidson, "Tinsley reported . . . things that [M] had told her which were consistent with touching by her father."

_____

[1]The following is a transcript of part of Davidson's interview with M:

```
Q- Do you remember going to the doctor?
A- Yep.
Q- Do you know why you went to the doctor?
A- Do you know what? (to worker)
A- (worker) No.
A- (M.) My daddy tried to tickle my privates.
   I told him not to; he did it anyway.  He
   scratched me.
Q- How did he scratch you?
A- With his whiskers.
Q- Where did he scratch you?
A- You know, don't you.
Q- No, tell me.
A- On my privates.
Q- did it hurt?
A- No, not at all.  I was almost going to cry
   but I didn't.
    *    *    *    *    *    *    *
Q- With what [did he tickle you]?
A- His hands.
Q- Where?
A- Right here (pointed to vagina).
```

Tinsley testified that M's allegations were "consistent with what [M] had told her mother and also what [M] had told Ms. Davidson."  She testified that based on her interviews with M and "due to the consistency of the allegations . . . [in her opinion] there had been some sexual abuse by the father."  Asked by Eggleston's counsel if M's allegations changed or were added to as time progressed, Tinsley testified that M alleged her father tickled her vagina with a feather and with his hands.  Sometimes M stated that she had her underwear on, and sometimes she said that she did not.  Although this allegation was not consistent with what M had related to Hardie in the bathroom, according to Tinsley, Hardie later recalled that M "had said something about [the feather] but it just didn't register with her . . . at the time."  Tinsley also reported that M repeated her own earlier statements that her father's whiskers had hurt her pointing at her groin.  On the last of her thirteen sessions with Tinsley, M stated that Eggleston had told her not to talk to the counselor about him anymore.

On July 21, 1994, Davidson issued her report of "founded" level 1 sexual molestation.  On July 28, 1994 Virginia State Police administered a polygraph test to Eggleston in which he denied sexual abuse of his daughter.  The results indicated that Eggleston told the truth.

On September 6, 1994, Mary Lou Jett, Director of Bristol Department of Social Services, sustained Davidson's disposition of "founded" on sexual molestation, level 1.  After an

administrative appeal hearing on November 21, 1994, a state hearing officer again sustained the agency's disposition. On February 25, 1998, the Circuit Court of Washington County, having reviewed the agency record and Eggleston's brief, found that substantial evidence supported the agency's decision and accordingly denied the petition for an appeal, and affirmed the agency's decision.

## II.  ANALYSIS

On review of an agency action, "the duty of the court with respect to issues of fact is limited to ascertaining whether there was <u>substantial evidence</u> in the agency record upon which the agency as the trier of facts could reasonably find them to be as it did."  Code § 9-6.14:17 (emphasis added).

> The "substantial evidence" standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind <u>might</u> accept as adequate to support a conclusion."  Under this standard, applicable here, the court may reject the agency's findings of fact "only if, considering the record as a whole, a reasonable mind would <u>necessarily</u> come to a different conclusion."

<u>Virginia Real Estate Comm'n v. Bias</u>, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (citations omitted).

For the purposes of DSS dispositions "'Founded' means that a review of all the facts shows clear and convincing evidence that the child abuse or neglect has occurred."  22 VAC 40-7000-10.

> Clear and convincing is that degree of proof that produces in the mind of the trier of

- 5 -

> facts a firm belief or conviction upon the allegations sought to be established. It is intermediate proof, more than a mere preponderance but less than proof beyond a reasonable doubt. It does not mean clear and unequivocal.

Oberbroekling v. Lyle, 234 Va. 373, 379, 362 S.E.2d 682, 685 (1987) (citation omitted).

Eggleston, on appeal, faults the hearing officer for failing to resolve inconsistencies in the testimony, and failing to appreciate the weaknesses in the evidence that tended to prove that Eggleston may have touched his daughter's vagina in other than a sexual manner. Eggleston points out in support of his argument that the evidence is too weak to meet the clear and convincing standard, that the agency based its disposition entirely on M's statements; that M's testimony conflicted as to whether the event occurred at night or nap time; that some of M's statements were whispered to her mother and then relayed to Tinsley; that M's recollection should have been more consistent given the short period of time between the alleged event and her recitation of the facts; that it was unlikely that Eggleston would risk abusing M with two other adults in close proximity; that it was unlikely that Eggleston would risk the possibility that M would divulge an episode of abuse at pre-school; that a polygraph test indicated his innocence; and that Eggleston adamantly denied the allegations.

Although Eggleston makes these observations concerning the nature and quality of the evidence against him, the question

remains whether credible evidence proves clearly and convincingly that Eggleston abused M. The DSS could reasonably have reached its conclusion after having fully considered Eggleston's claims of weaknesses, inconsistency, and improbability of the evidence. Additionally, the agency was not required to accept the polygraph examination results as controlling. DSS policy does not permit consideration of polygraph evidence in light of Virginia Supreme Court precedent declaring polygraph exams "so thoroughly unreliable as to be of no proper evidentiary use." Robinson v. Commonwealth, 231 Va. 142, 156, 341 S.E.2d 159, 167 (1986); see Virginia Department of Social Services, Child Protective Services, Vol. VII, § III, Ch. A, 1.5 (internal guidelines).

Eggleston further argues that even if the alleged event occurred, the agency had no basis to make a finding of sexual molestation because there was no evidence establishing that the contact or touching was for the arousal or gratification of Eggleston's sexual needs. DSS regulations define sexual molestation such that the offensive touching must be for arousal or gratification of sexual needs or desires. Because "intent is a state of mind that may be proved by an accused's acts or by his statements and that may be shown by circumstantial evidence," Wilson v. Commonwealth, 249 Va. 95, 101, 452 S.E.2d 669, 673-74 (1995) (citations omitted), the DSS was entitled to find sexual purpose through evidence of Eggleston's actions. M described Eggleston's touching with language from which the examiner and the trial court could reasonably conclude that it was for a

sexual purpose: "He tries to love it, and bite it and kiss it. My bahooney." M consistently stated that Eggleston tickled her vagina and that his whiskers scratched her genital area. Additionally, in describing Eggleston's kisses, M stated that "we kiss with tongues, we do it like grown ups." Moreover, from the very nature of the touching under the circumstances described by M, the fact finder could conclude that the touching was for sexual arousal or gratification.

Finally, Eggleston contends that even if the factual allegations are true, the absence of evidence of harm precluded a finding of "level 1" abuse. Level 1 abuse requires "injury/conditions, real or threatened, that resulted in or were likely to have resulted in serious harm to the child." 22 VAC 40-700-20. Here, where the evidence proved genital contact and multiple incidents, the agency reasonably could find that the abuse presented serious harm to the child and thus, the evidence entitled the agency to find level 1 sexual molestation.

We are mindful of the grave consequences that a DSS finding of level 1, sexual molestation has for Eggleston. However, unless DSS could not reasonably have found as it did, we are required to let its finding stand. Because M's evidence, if believed, is clear and convincing, DSS reasonably found level 1, sexual molestation. Accordingly, we affirm the circuit court's decision.

<u>Affirmed.</u>